**J. LOUIS CRUM CORPORATION, a Missouri Corporation, et al., Plaintiffs-Appellants,**

v.

**ALFRED LINDGREN, INC., a Missouri Corporation, et al., Defendants-Respondents.**

No. KCD28497.

Missouri Court of Appeals, Kansas City District.

Feb. 27, 1978.

Motion for Rehearing and/or Transfer Denied April 3, 1978.

Larry M. Woods, Sapp, Woods & Orr, Columbia, Jon M. Wickwire, James J. Tansey, Walstad, Wickwire, Peterson & Gavin, Vienna, Va., for plaintiffs-appellants.

Gene C. Morris, Rogers, Field, Gentry, Benjamin & Robertson, Kansas City, for defendants-respondents, Alfred Lindgren, Inc., Charles Parsons Const., Inc., Parsons-Lindgren Joint Venture and The Pennsylvania Ins. Co.

Roy F. Carter, Morris, Larson, King, Stamper & Bold, Kansas City, B. Daniel Simon, Brown, Wright, Willbrand & Simon, Columbia, for defendant-respondent Havens Steel Co.

Before PRITCHARD, P. J., SWOFFORD, C. J., and DIXON, J.

DIXON, Judge.

Plaintiffs appeal from the trial court action in the dismissal of two counts of their petition against separate defendants. A third count remains pending in the court below. Defendants filed a motion to dismiss on the ground that the orders appealed from were not final appealable orders because of the pending Count III. Upon the briefs submitted, the motion to dismiss was denied.

The dispute arises out of multiple contracts for the construction of the Hearnes Multi-Purpose Complex on the Columbia campus of the University of Missouri. A general statement of the various contracts and the relationship of the parties is necessary for an understanding of the issues.

The work to be constructed was a very large athletic facility, herein referred to as the "project." The contracts involved were originally between the Curators of the University and three contractors. J. Louis Crum Corporation was awarded the prime contract for the mechanical work on the project. Crum subcontracted portions of the work to Harold G. Butzer, Inc. and to Owens-Corning Fiberglass Corporation. All plaintiffs will be referred to as "Crum." Alfred Lindgren, Inc. was awarded the contract for the general construction of the project. Lindgren entered into a joint venture with Charles Parsons Construction, Inc. to perform Lindgren's contract. The joint venture will be referred to as "Lindgren." Various subcontractors were in-

volved, but the issues here presented involve only one such subcontractor, Havens Steel Company, Havens having contracted with Lindgren to furnish and install the structural steel for the project.

During the course of the work on the project, a large crane being used by Havens to place structural steel collapsed. This caused substantial damage to the partially completed structure. The collapse did not directly injure the work of Crum, but the claims for damage are predicated upon added costs accruing to Crum as a result of delays incident to the damage.

Count I, dismissed below, was a claim sounding in contract by Crum as plaintiff against Lindgren as defendant. Count II was a claim sounding in tort by Crum as plaintiff against Havens and The Pennsylvania Insurance Company, which was Lindgren's surety. Because of the disparate nature of the theories of the parties to the separate counts, they will be dealt with separately.

I

In Count I, Crum pleaded that Lindgren was the general contractor under a "prime" contract and that Crum was the mechanical contractor under a "prime" contract, both such contracts being with the University; further, that Crum subcontracted certain steel erection to Havens and that Pennsylvania executed a performance bond for Lindgren. It was further alleged that each of the prime contracts contained paragraphs 9c and 9d in relevant part as follows:

> "No contractor shall delay any other contractor by neglecting to perform his work at the proper time. Each contractor shall be required to coordinate his work with other contractors so as to afford others reasonable opportunity for execution of their work. Any costs caused by defective or ill-timed work, including liquidated damages if same are prescribed, shall be borne by contractor responsible therefor."

"Each contractor shall be responsible for damage to Owner's or other contractor's property done by him or men in his employ through his or their fault or negligence. If any contractor shall cause damage to any other contractor, the contractor causing such damage shall upon notice of any claim settle with such contractor by agreement or arbitration."

Crum alleged that a crane under the exclusive management and control of Lindgren and Havens collapsed, causing damage to the partially completed structure which resulted in disruption and delay in the performance of Crum's work under its contract. It was then pleaded that the acts of Lindgren and Havens were a breach of a contractual duty assumed by Lindgren under its contract conditions 9c and 9d, and Lindgren is liable for damages suffered by Crum as a result of the breach. Pennsylvania, it is also alleged, is responsible for the damage by reason of its surety bond.

Crum contends that it is a third-party beneficiary of the contract between Curators and Lindgren and that Lindgren's failure to promptly and on schedule perform its work was a breach of its contractual duty.

Lindgren and Pennsylvania contend that the relied-upon provisions do not create any liability for consequential damages. It appears that no direct damage occurred to the work of Crum. Pennsylvania contends first that there is no liability under Lindgren's contract and, hence, no liability on the part of Pennsylvania. Further, Pennsylvania contends that even if Lindgren is liable to Crum, it did not insure to Crum the performance of the contract.

■■■ As Crum notes, in reviewing a petition which has been dismissed on motion, the facts well pleaded are taken as true and the pleader is entitled to all favorable inferences from the facts. *Parker v. Sherman,* 456 S.W.2d 577 (Mo.1970). Nor is a pleader relegated to a narrow construction of the pleadings. In the face of a motion to dismiss, the pleading is to be given a reasonable intendment. *Zuber v. Clarkson Const. Co.,* 363 Mo. 352, 251 S.W.2d 52 (1952). And the reasonable inferences from the facts

pleaded will also be taken in support of the petition. *Fitzpatrick v. Federer,* 315 S.W.2d 826 (Mo.1958).

The first issue to be determined is the status of Crum as a third-party beneficiary. Lindgren and Pennsylvania do not directly counter this claim, but content themselves with a recital of the principles of contract construction and the assertion that a third-party beneficiary takes the contract as he finds it, all of which may be conceded.

■■■ As Crum contends, the primary question of the status of Crum as a third-party beneficiary is to be determined upon the intention of the parties. That intention may be gleaned from the situation of the parties, the facts and circumstances attending the execution of the contract, and the apparent purpose the parties intend to accomplish. *Black and White Cabs of St. Louis, Inc. v. Smith,* 370 S.W.2d 669 (Mo. App.1963). Lindgren argues that the contract is clear and unambiguous and the situation and circumstances of the parties is not to be considered. That position is much too narrow a view for the issue presented here. By the very nature of third-party contracts, the situation of the parties is an essential factor in determining the rights and duties under the agreement. In the instant case, Crum pleads that it is a "prime" or original contractor with the Curators and that Lindgren occupies the same position under an identical contract. Those contracts were intended to accomplish the overall project in a timely fashion. When the language of the contract set forth above is examined in that factual matrix, it appears that the prime contractor's agreement to perform in a timely fashion ran to the Curators and required that each contractor complete its work in a timely fashion and not impede the work of other contractors.

That coordinate obligation of Lindgren, the general contractor, and Crum, the mechanical contractor clearly imposed by the nature of the project a reciprocal relationship. That one of these contractors *could* delay the work of the other is clear from

the provisions of the contracts dealing with such delay. That the Curators desired to shift the cost of such delay to the party causing the delay is equally apparent.

Crum cites and relies upon *M. T. Reed Const. Co. v. Virginia Metal Products Corp.*, 213 F.2d 337 (5th Cir. 1954), and *Visintine & Co. v. New York, Chicago & St. Louis R. Co.*, 169 Ohio St. 505, 160 N.E.2d 311 (1959), in support of its theory of recovery.

*Virginia Metal Products Co.* is a case which, although filed in the federal courts, involved the application of the law of Mississippi. In that case, three separate and substantially identical contracts were awarded by the State of Mississippi to construct a library at the state university. These were a general contract, a contract for shelving, and a plumbing and heating contract. The opinion characterizes the contracts as follows:

> "These contractors agreed in their respective contracts to coordinate their work and cooperate with each other so as to facilitate and expedite the completion of the building." 213 F.2d at 337–8.

Further recitals in the opinion disclose that the contracts contained agreements to coordinate work similar to and that any cost of defective or ill-timed work should be borne by the party responsible therefor.

The general contractor brought an action against the contractor responsible for the shelving and recovered a jury verdict. The trial court set aside the verdict on the ground that the general contractor was but an incidental beneficiary of the contract between the shelving contractor and the state and could not maintain an action on that contract.

The Fifth Circuit Court of Appeals reversed, holding that the plaintiff was a direct beneficiary of the contract between the state and the shelving contractor. The language and reasoning of the court is pertinent to the instant case. The court said:

> "The building could not have been completed without such mutual obligation on the part of each of the contractors, and the obligation so to do was a part of the consideration that induced each of the contractors to undertake its particular job at the agreed price." 213 F.2d at 338. ". . . [T]he contract in suit made the several contractors direct beneficiaries of the contractual provision that any contractor would be liable for any actual damages inflicted upon another contractor on this job because of the breach of any duty assumed under the contract by the contractor." 213 F.2d at 339.

Lindgren attempts to distinguish the case by asserting there was no mishap or negligence and that the court relied upon other provisions of the contract not pleaded here. The fact remains, however, that the court announced as a matter of substantive principle that mutually reciprocal contracts in a construction project give rise to a cause of action for delays and damage to other contractors upon the failure of another contractor to honor the basic commitments of the contract with the owner which causes damage to other contracting parties.

*Visintine* is likewise a situation where the state had contracted with separate contractors for an overall project, each of the contractors to perform portions of the work and in a time sequence. The court described it as follows:

> " 'The nature of the work was such that none of the parties could perform its part in a single operation, but numerous ones were required and the time when each was to be performed was specified and spelled out in the plans and specifications agreed upon.' " 160 N.E.2d at 312.

The plaintiff Visintine brought its action based on the failure of the railroad company defendants to perform the work under their contract in a timely and proper fashion. The court approached the case as one involving a third-party-beneficiary theory by the plaintiff to recover upon the contracts between the defendants and the State of Ohio. The court held that the allegation of the plaintiff that it was the duty of all contractors to cooperate and coordinate their work gave rise to reciprocal rights and duties under the contracts and that the plaintiff was a third-party

beneficiary and sustained the petition of the plaintiff against demurrer, but affirmed the lower court in sustaining a demurrer to a tort cause of action.

▮ *Visintine* is remarkably similar on its facts to the instant case and presents again an analysis of law which demonstrates a substantive principle permitting recovery under contractual relationships such as exist and are pleaded in the instant case. The settled law in Missouri is that upon a motion to dismiss if the facts pleaded give rise to a substantive principle upon which recovery may be had, then the petition will be upheld as stating a cause of action. *Williamson's Estate v. Williamson,* 380 S.W.2d 333 (Mo.1964).

Examining the pleading in the instant case, it appears to invoke substantive principles under established law in Missouri.

▮ Thus, if Crum was a third-party beneficiary, Crum was entitled to bring an action on the contract between Lindgren and the Curators. The authority cited, *Virginia Metal Products* and *Visintine*, are persuasive on this issue.

Under all the circumstances, Crum, as a third-party beneficiary of the agreement between Lindgren and the Curators, was entitled as much as the Curators to a timely performance and the coordination of work of Lindgren. The language of the contract, "Any costs caused by defective or ill-timed work, . . ., shall be borne by contractor responsible therefor," makes it clear that consequential damages from the failure to properly coordinate the work were within the contemplation of the parties when the contract was executed. It follows Crum's petition states a cause of action against Lindgren.

▮ The issue with respect to Pennsylvania must be resolved to the contrary. The surety bond guaranteed the *completion* of the project to the Curators. There is nothing in the agreement to indicate an intention to indemnify anyone but the Curators upon the basic obligation of the bond performance by Lindgren. The fact that Crum is a third-party beneficiary of the contract between Lindgren and the Curators under the provisions of the contract relating to the coordination of efforts and the costs of delays does not make it a third-party beneficiary of the separate agreement between Pennsylvania and the Curators providing for payment to the Curators if Lindgren failed to perform the contract. As to that branch of the case, there would initially have to be a pleading that Lindgren failed to perform his contract to build. *Audrain County v. Walker,* 236 Mo.App. 627, 155 S.W.2d 251 (1941). Upon the second portion of the surety bond, it is equally clear that the petition states no cause of action against Pennsylvania.

The argument by Crum is to the effect that the intent of Lindgren, the Curators, and Pennsylvania was to guarantee all of the promises and undertakings of Lindgren and, therefore, the obligation of Lindgren to pay Crum for materials furnished and labor costs arose out of Lindgren's breach of contract. Before that argument would have any vitality, Crum would necessarily have to be a third-party beneficiary of the performance portion of the Pennsylvania bond. In *Wilbur Waggoner Equipment Rental v. Bumiller,* 542 S.W.2d 32 (Mo.App. 1976), the court squarely considered the issue of whether a contractor could be a third-party beneficiary under a performance bond and the court held that under a purely performance bond, no third party status arose in an unpaid claim for labor and materials. The court distinguished in that case those cases where the bond specifically provided indemnity for the payment for labor and material furnished in the performance of the contract.

This bond does provide for indemnity for unpaid claims for labor and material furnished. No part of the cause of action asserted by Crum in Count I is within the provisions of the surety bond for payment for wages or material furnished. The only material Crum claims was furnished was an additional condenser coil to replace one that was frozen by the alleged failure of Lindgren to furnish heat. That claim is part of Count III not before this court at this time.

The balance of Crum's claim is for increased costs because of delay which resulted in a diminishment of its profit or creation of an outright loss. There is no claim that Crum has not received from the Curators its full contract price for the work performed.

Properly analyzed, the bond creates an obligation to pay claims for labor and materials furnished which would be the obligation of Curators if Lindgren defaulted in payment. The theory urged against Pennsylvania is at war with the basic theory of Crum's case against Lindgren that the prime contract shifted the cost of delay from the Curators to Lindgren. The payment portion of the bond for unpaid materials and labor is dictated by Section 107.170 RSMo 1969, which extends to workmen and suppliers the same measure of protection as the lien statutes afford under private construction projects. As a *contractor*, to claim this protection Crum would need to show that some portion of its contract price or an agreed upon addition to the contract work remained unpaid. Crum argues it furnished labor and materials that *"arose"* out of Lindgren's breach. Measured as it must be, for the purposes of the bond, that additional cost is a part of its "contract" price to the Curators and is not the kind of claim which Section 107.170 RSMo 1969 is intended to protect. It follows that Crum states no cause of action against Pennsylvania upon the bond.

## II

Summarized but given the most liberal intendment, the allegations of Count II may be stated as follows. Crum (and its co-plaintiffs) were licensed contractors to perform mechanical work on the Project under a prime contract by Crum. Lindgren (and its joint venturer) were general contractors on the project. Both prime contracts with Curators provided for identical completion dates and were identical in all terms except division of work. The contracts contained Paragraphs 9c and 9d, set forth above. Havens was a subcontractor of Lindgren and, in the performance of that subcontract to erect steel, was using a crane which was under the exclusive management and control of Havens and Lindgren.

The crane collapsed, damaging the roof, damaging the structure, delaying Crum's work, and causing additional costs. The crane was, by reason of the negligence, fault, and carelessness of Lindgren and Havens, caused to fall. Such a crane mishap does not occur if those in charge use due care, and the defendants Lindgren and Havens possess superior knowledge of the cause of the occurrence.

Plaintiff then further alleged that as a direct and proximate result of the negligence that delay, disruption and resequencing of plaintiff's work occurred and, as a result, the plaintiff was caused to incur additional labor and material costs.

This collage of allegations of tort and contract is caused by the incorporation by reference in Count II of the allegations of Count I. Despite the ambiguous nature of the pleading in Count II, all of the parties concur that it is an attempt to plead a cause of action sounding in tort.

Crum claims that Lindgren and Havens owed a common law duty to Crum to act in such a way as to not injure plaintiffs. The arguments of the parties focus upon *Westerhold v. Carroll*, 419 S.W.2d 73 (Mo.1967) and *Aluma Kraft Manufacturing Co. v. Elmer Fox & Co.*, 493 S.W.2d 378 (Mo.App. 1973). Crum asserts these cases create a cause of action in it for the negligent performance of the contract between Lindgren and the Curators. Lindgren argues there is an insufficient nexus or connection and that the imposition of a duty in this case would restrict and embarrass the making of contracts by burdening the contract with potential liability to third parties. Havens, on the other hand, argues that there is no duty on the part of Havens based on any pleaded contract and that Crum has pleaded only a negligent interference with contract cause of action as to Havens. Havens asserts that cause of action is not recognized in Missouri.

First considering the application of *Westerhold* and *Aluma Kraft Manufacturing Co.*, they represent a line of cases which

create liability in tort where a negligently made *representation* is relied on by a third party resulting in damage. They are direct kinsmen of *Glanzer v. Shepard*, 233 N.Y. 236, 135 N.E. 275 (1922), where buyers, in reliance upon a negligently made weight certificate, were permitted to recover against the weighmaster.

Liability in such cases has been found in three situations: first, where the negligent actor has knowledge of the specific injured party's reliance (*Aluma Kraft Manufacturing Co., supra*); second, where the plaintiff is a member of a group that the negligent actor seeks to influence (*Granberg v. Turnham*, 166 Cal.App.2d 390, 333 P.2d 423 (1958)); and, third, in cases where the negligent actor has special reason to know that some member of a limited group will rely on the information misrepresented. *M. Miller Co. v. Central Contra Costa Sanitary Dist.*, 198 Cal.App.2d 305, 18 Cal.Rptr. 13 (1961). Other courts have denied recovery in this last category of cases. *Texas Tunneling Company v. City of Chattanooga*, 329 F.2d 402 (6th Cir. 1964). The case law referred to above has been adopted by the Restatement (Second) of Torts § 552 (1964).

██ *Westerhold* and *Aluma Kraft Manufacturing Co.* do not support the plaintiff's position. There is no allegation of representation to afford a basis for the application of those cases or Restatement (Second) of Torts § 552 (1964).

What Crum seeks by this argument is an extension of the rule of these cases to a negligent act which interferes with a contract of the plaintiff. The case law in Missouri contains statements following the general rule that the law does not protect a contractual interest from mere negligent interference. *Frank Horton & Co., Inc. v. Diggs*, 544 S.W.2d 313, 316 (Mo.App.1976), where the cases supporting that proposition are cited and the rationale given that such a remedy would unduly burden freedom of action and impose too severe a penalty for inadvertence. The entire spectrum of case law and treatises in this area is examined in a note entitled, *Negligent Interference with Contract: Knowledge as a Standard for*

*Recovery*, 63 Va.L.Rev. 813 (1977), where it is suggested the tort of negligent interference with contracts be recognized and recovery be limited to those situations where the tortfeasor had knowledge of the risk of harm to the plaintiff. Even if this rationale were adopted, Crum's pleading would fail in the instant case as to Havens because no special knowledge by Havens of the risk of harm to Crum is even intimated. As to Lindgren, if the plaintiff's theory that it is a joint tortfeasor be accepted, then it is likewise true that no facts are pleaded, and no inference arises that Lindgren was aware of the special risk of delay arising from the claimed negligence.

The cases cited by Crum in support of its tort theory are inapposite since they are all cases where a negligent act arising out of the performance of a contract results in physical harm.

Crum has not appealed from the order dismissing Count II as to Pennsylvania, and that issue is concluded.

Lindgren asserts that the petition should be dismissed because there is no such entity as the joint venture described in plaintiff's petition. The motions which are addressed in this opinion were filed on behalf of the joint venture, and no issue was made by those motions as to a lack of capacity. Rule 55.13 requires such an issue be raised by specific negative averment in the pleadings. The point is denied.

The cause is affirmed as to the trial court's dismissal of Count II, the trial court's dismissal of Count I as to Pennsylvania is affirmed, and the trial court's dismissal of Count I as to Lindgren is reversed, and the cause is remanded with directions to reinstate Count I of the petition as to Lindgren only.

All concur.