VOLUME SERVICES, INC., Appellant,

v.

C.F. MURPHY & ASSOCIATES, INC., et al., Defendants.

No. WD 33774.

Missouri Court of Appeals, Western District.

Aug. 16, 1983.

Douglas Laird (argued), Gage & Tucker, Kansas City, for appellant.

Shughart, Thomson & Kilroy, Kansas City, for defendant C.F. Murphy & Assoc.

Morrison, Hecker, Curtis, Kuder & Parrish, Kansas City, for defendant J.E. Dunn Const. Co.

Field, Gentry, Benjamin & Robertson, Kansas City, for defendant K.C. Structural Steel Co.

Jackson & Sherman, P.C., Kansas City, for defendant Bethlehem Steel Corp.

Linde, Thomson, Fairchild, Langworthy & Kohn, Kansas City, for defendants Campbell, Roenigk, Luellen, Quinlan and Keith.

Before NUGENT, P.J., and WASSERSTROM and KENNEDY, JJ.

NUGENT, Judge.

Plaintiff appeals from the trial court's dismissal of counts one through five, nine, and ten of their ten-count petition for damages arising from the collapse of the roof of the R. Crosby Kemper Memorial Center (hereinafter Kemper Arena). All seven of the dismissed counts relate to all defendants *except* the city of Kansas City, Missouri (hereinafter "non-city" defendants). Counts I through V name only the non-city defendants. Counts I and II allege negligence in the construction and design of Kemper Arena and seek recovery for damage to plaintiff's equipment and inventory, as well as for the loss of plaintiff's concession rights. Count III is based on products liability. Count IV alleges breach of an implied warranty of usefulness, and Count V alleges that defendants negligently and recklessly misrepresented that Kemper Arena was properly designed and constructed. Counts VI, VII and VIII are solely against the city, alleging breach of contract, negligent maintenance and operation of Kemper Arena, and wrongful representation that the arena was free of defects. Counts IX and X name only the non-city defendants. Count IX pleads breach of a contract between the city and the non-city defendants, to which plaintiff was a third party beneficiary. Count X pleads breach of a nondelegable duty owed plaintiff by the defendants. We are asked to determine whether any of Counts I through V, IX and X state a cause of action. We reverse in part and remand to the trial court for further proceedings consistent with this opinion.

■■■ On review of the trial court's dismissal of a petition, our duty is to determine if the facts pleaded and reasonable inferences to be drawn therefrom when viewed in the light most favorable to the plaintiffs, demonstrate any ground for relief. *DeMaranville v. Fee Fee Trunk Sewer, Inc.*, 573 S.W.2d 674, 676 (Mo.App.1978). Even if the petition is imperfectly or defectively stated, we must accept as true all facts it avers, construe all averments liberally and favorably to the plaintiff and determine whether they invoke principles of substantive law upon which relief may be granted. *City of Kansas City v. Mary Don Co.*, 606 S.W.2d 411, 413–14 (Mo.App.1980).

Doing so, we accept as true the following facts which appear in plaintiff's first amended petition dated May 8, 1981.

Volume Services, a wholly owned subsidiary of Interstate United, Inc., operates refreshment vending stands and vending services. Defendant C.F. Murphy & Associates, Inc. designed the Kemper Arena and supervised its construction. Defendant J.E. Dunn Construction Co. was the general contractor. Defendant Kansas City Structural Steel Co. was a sub-contractor responsible for the erection of the structural steel elements supporting the roof. Defendant Bethlehem Steel Corp. manufactured the bolts used to support the roof. The individual defendants comprise the last board of directors of Bob D. Campbell & Co. which participated in the design and construction of the structure which supported the roof.

On December 11, 1973, Volume Services entered into an agreement with the city by which the city leased to Volume Services certain areas in the arena designated as "concession premises" and granted exclusive vending machine and concession rights.

The non-city defendants had knowledge of this agreement.

On June 4, 1979, the roof of the Kemper Arena collapsed as a result of the non-city defendants' negligence. Thirteen specific failures of design and construction are listed, including failure to design and construct the roof to withstand stress caused by normal weather conditions; failure to design and construct devices to drain water from the roof; failure to design, construct, inspect, and test adequate roof supports; failure to provide a warning system for stress build-up; failure to design and manufacture parts that could withstand normal and foreseeable pressures; and failure to warn that the parts provided were not capable of withstanding such pressures. The defects were said to be concealed so that a reasonable inspection by plaintiff would not have revealed them. Plaintiff asserts that as a direct and proximate result of defendants' negligence, Kemper Arena was completely unusable from June 4, 1979, to February 20, 1980, damaging plaintiff's leasehold estate, damaging plaintiff's equipment and inventory, and rendering worthless plaintiff's exclusive right to use and occupy the arena. Plaintiff alleges in Count I and every subsequent count that it suffered damages of $200,000.00 plus costs.

In Count II, plaintiff alleges as well that the non-city defendants' defective design and construction rendered Kemper Arena "essentially, imminently and unreasonably dangerous to plaintiff, other users of the building and the general public."

In Count III, plaintiff alleges that the arena, including the bolts, steel structures, and other material used in its construction, was in a defective condition unreasonably dangerous at the time of the collapse.

In Count IV, plaintiff alleges that the non-city defendants warranted that the arena was designed and constructed in a skillful and workmanlike manner when in fact it was not suitable for the intended purpose of business and entertainment.

In Count V, plaintiff alleges that the non-city defendants negligently and recklessly misrepresented that the arena was properly designed and constructed, knowing that those representations were not true and knowing that the general public would rely on those misrepresentations. In reliance on them, the plaintiff entered into its agreement with the city, an agreement rendered worthless by the collapse of the roof.

In Count VI against the defendant city plaintiff alleges that it entered into an agreement with the city to lease certain areas of Kemper Arena, that it performed all terms and conditions of the agreement, but that the city failed to make the arena available for the exclusive lease of the "concession premises" and the exclusive concession and vending machine rights.

In Count VII, plaintiff alleges that the city negligently maintained and operated Kemper Arena in that its roof and supporting structures were dangerous and defective as fully described in Count I. Further, the city was negligent in wrongfully representing that the arena was free from defects at a time that it knew or should have known that the arena was in a dangerous and defective condition in violation of city ordinances pertaining to the maintenance of the foundations, walls and roofs.

In Count VIII, plaintiff alleges that the city's negligent maintenance and operation of Kemper Arena rendered the arena "essentially and imminently dangerous" to plaintiff and the general public.

In Count IX, plaintiff again names only the non-city defendants and alleges that such defendants designed and constructed Kemper Arena, specially intending that designated areas would be for the use of plaintiff or another concessionaire, that plaintiff was a third party beneficiary to the contracts between the non-city defendants and the city, and that the non-city defendants breached their contractual obligation to design and construct a safe, habitable structure in a workmanlike manner free from defects.

Finally, in Count X against the non-city defendants, plaintiff alleges that at the time of the design and construction of the arena, plaintiff was within a foreseeable

class of those who would be damaged by defendants' negligence and that the defendants owed a nondelegable duty to plaintiff and others to exercise due care ordinarily possessed by the members of their professions.

The non-city defendants filed motions to dismiss Counts I—V and IX—X of plaintiff's petition. On April 23, 1982, Judge Sprinkle dismissed Counts I—V for failure to state a claim on which relief can be granted. Volume Services filed a notice of appeal from that order on April 30, 1982. On the same day, Volume Services moved for reconsideration or in the alternative, that the April 23 order be designated as final for the purposes of appeal. On May 27, 1982, plaintiff's motion for reconsideration was denied, but the order of April 23 was designated as final. On August 13, 1982, Judge Sprinkle entered an "Amended Order", amending the order of April 23 to dismiss Counts I—V *and* Counts IX and X for failure to state a claim. On August 20, 1982, plaintiff filed a second notice of appeal from the August 13 order. (On August 27, 1982, that appeal was consolidated by this court with the earlier appeal).

■■■ Because Judge Sprinkle's "Amended Order" of August 13, 1982, did not indicate whether he intended that his designation of the dismissal of Counts I—V as final should apply to Counts IX and X as well, and because we wish to avoid piecemeal review of those counts at a later date, we issued a special remand on June 24, 1983, requesting that Judge Sprinkle clarify the record to indicate whether he had intended that his designation as final should apply to all dismissed counts.[1] On July 6, 1983, he designated Counts IX and X as final for purposes of appeal. Pursuant to Rule 81.05(b), plaintiff's premature filing of notice of appeal on those counts was deemed moved up to that date. Appeal from the dismissal of all seven counts is, therefore, properly before this court.[2]

As we proceed, then, to the substantive issues of this case, we note first that many of the issues raised here have been disposed of in *Chubb Group of Ins. Cos. v. C.F. Murphy & Assoc., Inc.,* 656 S.W.2d 766, handed down concurrently herewith. That case involved plaintiffs in a substantially similar position to the plaintiff's here, raising the same issues as those raised here in Counts I—V, against the same defendants, for damages arising from the same occurrence, the collapse of the roof of the Kemper Arena. Although a request by the plaintiffs in *Chubb Group* for consolidation with the instant case on appeal was denied by this court on August 27, 1982, the two cases were argued on the same date and have been treated as companion cases. Therefore, where issues raised here are disposed of in *Chubb Group,* we incorporate by reference the relevant portions of that opinion.

### Counts I and II—Negligence

Just as in *Chubb Group,* plaintiff argues that the trial court erred in dismissing Counts I and II for negligence because it properly pleaded the elements of actionable negligence as presented in *Scheibel v. Hillis,* 531 S.W.2d 285, 288 (Mo.1976) (en banc): (1) the existence of a duty; (2) breach of that duty; and (3) injury resulting from that breach.

1. For the reasons given in our opinion in the companion case of *Chubb Group of Ins. Cos. vs. C.F. Murphy & Assoc., Inc.,* 656 S.W.2d 766, handed down concurrently herewith, specific designation of the dismissal of these counts as final was required by Rule 81.06. Equally important, Judge Sprinkle was without jurisdiction to "amend" on August 13, his retention of control over the judgment having ended thirty days after April 23 according to Rule 75.01. We view his dismissal of Counts IX and X, therefore, as a separate order requiring independent designation as final.

2. Although none of the parties has raised the issue of whether plaintiff's appeal is taken from a final, appealable judgment and is, therefore, timely, the first duty of an appellate court is to determine this issue, *sua sponte* if necessary. Absent a final judgment and timely notice of appeal, we are without appellate jurisdiction. *Kansas City Power and Light Co. v. Kansas City,* 426 S.W.2d 105, 107 (Mo.1968); *Shell v. Shell,* 605 S.W.2d 185, 190 (Mo.App.1980); *Caudle v. Kelley,* 545 S.W.2d 427, 428 (Mo.App. 1976).

■ The primary issue is whether the defendants, in entering into contracts with the city to design and construct the arena, assumed a duty to exercise the ordinary care of their professions to avoid damage to this plaintiff. For all the reasons given in *Chubb Group,* we hold that they did.

In addition, we pointed out in *Chubb Group* that the question of whether a plaintiff may recover for the type of injury incurred depends on its foreseeability. There, we stated that although plaintiffs had not specifically alleged that their agreement with the city for exclusive possession of the arena was a leasehold agreement, they had pleaded such an agreement in legal effect and must be given the opportunity to prove the existence of their leasehold if they can. We held that it was the existence of plaintiffs' leasehold that made their loss foreseeable by defendants who were alleged to have been aware that the arena would be used for entertainment purposes. Absent such foreseeability, defendants would be exposed to unlimited liability to all establishments which may have suffered some collateral loss of business as a result of the collapse of the roof. We grounded defendants' liability, then, on negligent interference with the plaintiffs' right to use and enjoy their leasehold and found that plaintiffs' leasehold interest, a recognized property right, made inapplicable cases cited by defendants which hold that Missouri does not recognize a cause of action for negligent interference with mere contractual rights.[3]

Here, plaintiff's right to recover in negligence is even more clear than that of the plaintiffs in *Chubb Group.* Volume Services has specifically alleged both a leasehold estate and damage to other property, including inventory and equipment. Moreover, while the *Chubb Group* plaintiffs were not yet in possession of the leasehold and their right to recover was therefore premised on the Restatement (Second) of Property sec. 5.2 (1977) position that a tenant may recover from one who damages the

leased property before his entry, plaintiff here alleges that it was actually in possession at the time of the roof collapse. Missouri case law has specifically found a right of recovery in such circumstances. *See Shaw v. Greathouse,* 296 S.W.2d 151, 153 (Mo.App.1956).

■ Although defendants contest Volume Service's "legal conclusion" that the agreement with the city is, in fact, a lease, our review of this motion to dismiss is limited to determination of whether plaintiff's allegations state a cause of action. Proof is not required at this stage of the proceedings. Here, however, we do have the benefit of the lease agreement itself provided in the legal file. This agreement appears, on its face, to constitute exactly what plaintiff alleges that it is—a lease agreement granting Volume Services an exclusive right to possess the "concession premises" in Kemper Arena for a period of ten years subject to conditions specified by the city. If the intent of the parties is otherwise, this is a fact issue which must be left to the jury. *See State ex rel. Highway Comm'n v. Johnson,* 592 S.W.2d 854, 859 (Mo.App.1979).

■ We hold therefore, that plaintiff's Counts I and II state a cause of action for negligent interference with a tenant's right to use and enjoy a leasehold within the limitations we expressed in Counts I and II of the *Chubb Group* opinion. Should plaintiff be able to prove its cause of action, it would be entitled to its prospective profits, limited by the general rule that such profits are recoverable only when proved to be reasonably certain had it not been for defendant's tortious conduct, and when ascertainable and measurable with reasonable certainty. *Riddle v. Dean Machinery Co.,* 564 S.W.2d 238, 257 (Mo.App.1978).

### *Count III—Products Liability*

■ In Count III, plaintiff pleaded the recognized elements of products liability: (1) that the defendants designed or manufactured Kemper Arena, the allegedly de-

---

**3.** *See J. Louis Crum Corp. v. Alfred Lindgren, Inc.,* 564 S.W.2d 544 (Mo.App.1978), and *Frank*

*Horton & Co., Inc. v. Diggs,* 544 S.W.2d 313 (Mo.App.1976).

fective product; (2) that the arena was in a defective condition unreasonably dangerous for any reasonably anticipated use; (3) that the arena was used in a manner reasonably anticipated; and (4) that plaintiff was damaged as a result of the defect. *See Blevins v. Cushman Motors, Inc.,* 551 S.W.2d 602 (Mo.1977) (en banc), and *Keener v. Dayton Elec. Mfg. Co.,* 445 S.W.2d 362 (Mo.1969).

In *Chubb Group,* we considered the consumer protectionist principles underlying products liability and concluded that such principles simply do not appear applicable to architects, engineers, or contractors involved in the design and construction of commercial buildings built for a particular client presumably pursuant to a building contract. For the reasons discussed in *Chubb Group,* we hold that as to defendants C.F. Murphy & Associates as the architect and construction supervisor, J.E. Dunn Construction Co. as the general contractor, and individual defendants Campbell, Roenigk, Luellen, Quinlan, and Keith as consulting structural engineers, plaintiff here has no cause of action for products liability.

We held also in *Chubb Group* that *as suppliers of products* incorporated into the structure, Bethlehem Steel and Kansas City Structural Steel may be held to the standards of strict liability. Bethlehem Steel is alleged to have manufactured the bolts used to secure the roof's supports, and Kansas City Structural Steel is said to have been responsible for the erection of steel beams and frames. (Although Kansas City Structural Steel's precise role is not entirely clear, in its brief it informs us that its duty was to "fabricate and erect" the structural steel in the arena. We note that the definitions of "fabricate" in Webster's New International Dictionary (2d ed.1974), include "to form by art or labor, to manufacture; produce," lending credence to the implication in the pleadings that the firm's role involved producing the beams themselves.) Plaintiff specifically alleges that the bolts and steel structures used in the arena were in a defective condition. For citations to foreign cases holding manufacturers of such building components strictly liable, see our *Chubb Group* opinion.

We hold therefore, that plaintiff must be permitted the opportunity to discover and present evidence as to Kansas City Structural Steel's role in the "erection" of the steel beams and that if that role included providing the beams themselves, strict liability may be an appropriate cause of action as to both that defendant and Bethlehem Steel Corp.

## Count IV—Implied Warranty

In its fourth count, plaintiff pleaded implied warranty, alleging that the defendants "did impliedly warrant that the Arena was designed and constructed in a skillful and workmanlike manner and was free of defects in design, workmanship and material," when in fact it was not fit for use.

For the dual reasons that this cause of action has not been extended in Missouri to non-residential commercial buildings and that the court in *Crowder v. Vandendeale,* 564 S.W.2d 879 (Mo.1978) (en banc), made clear that Missouri law requires privity between builder and purchaser in an implied warranty action, we held in *Chubb Group* that an implied warranty cause of action is inappropriate on these facts.

Plaintiff argues here, however, that even if we should decide that privity is necessary to implied warranty, such privity exists in this case between Volume Services and two of the defendants, C.F. Murphy & Associates and J.E. Dunn Construction Co., and hence, a cause of action lies.

We must disagree.

First, contrary to plaintiff's contention, the existence of a contract between itself and these two defendants was not alleged in its petition. The closest to such an allegation appears in Count I, and again by incorporation by reference in Count IV, which allege that "Kemper Arena was in fact designed in contemplation of use by persons and corporations such as plaintiff Volume Services." That is not adequate.

Plaintiff informs us, nevertheless, in its brief that a contract did exist in which Volume Services paid J.E. Dunn for finishing work on the concession areas, and C.F. Murphy for design work. In support of that contention, plaintiff draws our attention to certain documents in the legal file. Those documents do not support plaintiff's position. Assuming arguendo that they constitute a contract, the documents represent a contract only for work in the concession areas. At most, an implied warranty (if one existed for commercial structures) might be said to exist for that work. The fact that J.E. Dunn and C.F. Murphy performed finishing work in that limited area, however, cannot be stretched to indicate that these defendants impliedly warranted as well their work on the arena's roof, work for which Volume Services, by any stretch of the imagination, cannot be said to have contracted.

We hold, therefore, that no cause of action for implied warranty exists here against any of these defendants.

### Count V—Negligent Misrepresentation

In Count V, plaintiff alleges that the "defendants negligently and recklessly misrepresented to plaintiff ... that Kemper Arena was properly designed and constructed in a skillful and workmanlike manner ...." Those representations are said to have been made "under circumstances in which defendants knew ... that the facts of such misrepresentations were not true," and "with the intent that they should be relied upon by the general public ... including plaintiff."

■■■ For the reasons stated in *Chubb Group,* we hold that those allegations, liberally construed, could conceivably state a cause of action for negligent misrepresentation based on Restatement (Second) of Torts sec. 552 (1977), but only if the alleged misrepresentations were made for the express purpose of influencing plaintiff to enter into a contractual agreement with the city or to assist the city in influencing a finite group, including plaintiff, which defendant had a special reason to know would

rely on the information. Status as a member of the general public would not suffice. The mere existence of the structure certainly would not constitute misrepresentation, nor would statements negligently made to the city that the work was sound absent an intent to influence plaintiff to contract with the city. Just as in *Chubb Group,* we hold that plaintiff must be given the opportunity to present what evidence it can that negligent misrepresentations were made by defendants for such a known business purpose.

### Count IX—Third Party Beneficiary

In addition to the first five counts common to both this case and *Chubb Group,* plaintiff here also alleges that it "was a third party beneficiary of the contracts between and among the defendants and the City of Kansas City" and that the design and construction of Kemper Arena "was specially intended to and did benefit the plaintiff ...."

■■■ A third party beneficiary is one who is not privy to a contract but who is benefited by it and who may maintain a cause of action for its breach. *Stephens v. Great Southern Sav. and Loan Ass'n,* 421 S.W.2d 332 (Mo.App.1967). The doctrine does not permit all those who benefit from a contract to sue, however. Only those third parties for whose benefit the contracting parties *intended* to make the contract may do so. Intention is to be gleaned from the contract itself and if it is uncertain or ambiguous, from the surrounding circumstances, *Laclede Inv. Corp. v. Kaiser,* 596 S.W.2d 36, 41 (Mo.App.1980), including the apparent purpose the parties intended to accomplish. *J. Louis Crum Corp. v. Alfred Lindgren, Inc.,* 564 S.W.2d 544 (Mo.App. 1978). The necessary intent is not simply a desire to advance the interests of another, "but rather an intent that the promisor assume a direct obligation to him." *Stephens v. Great Southern Sav. and Loan Ass'n, supra* at 335. Although the third party beneficiary need not be named in the contract, the contract terms must *clearly express* an intent either to benefit that

party or an identifiable class of which the party is a member. Absent such express declarations, a strong presumption arises that parties contract for themselves and not for the benefit of others. *Laclede Inv. Corp. v. Kaiser, supra* at 42. Mere incidental beneficiaries, parties benefiting only collaterally from the contract, are not entitled to recover. *Kansas City Life Ins. Co. v. Rainey*, 353 Mo. 477, 182 S.W.2d 624, 628 (1944); *Black and White Cabs of St. Louis, Inc. v. Smith*, 370 S.W.2d 669 (Mo.App. 1963); *Stephens v. Great Southern Sav. and Loan Ass'n, supra.*

In each of the cases which we have examined concerning the question of whether a plaintiff's petition states a cause of action as a third party beneficiary of a contract, resolution of the pivotal question of intent was aided by the inclusion of the contract itself. Here, plaintiff has not so aided us, but neither is it required to do so. Rule 55.22 permits the pleading of a written instrument "according to legal effect." Plaintiff has pleaded that the parties to the contracts "specially intended" to benefit it, thereby making it a third party beneficiary.

These averments are certainly marginal. Nevertheless, we can conceive of factual circumstances which could support the "specially intended" allegation. Although a mere knowledge by the parties that some class of businesses, or even a particular business, might profit from the contract would not suffice,[4] specific provisions in the contracts showing an assumption of responsibilities by the defendants for all damage to lessees or other classes of which plaintiff is a member, could adequately indicate intent. For example, *see St. Joseph Light and Power Co. v. Kaw Valley Tunneling, Inc.*, 589 S.W.2d 260 (Mo. 1979) (en banc), in which the court held that the power company, which suffered property damage resulting from the negligent construction of a sewer by the city of St.

Joseph, was a third party beneficiary of a contract between the city and the contractor. There, the contractor specifically agreed to be held responsible for all damage to existing structures resulting from his operations, protecting all members of the public, including utilities. Even though the plaintiff was not specifically named in the contract, the court held that it was, indeed, a third party beneficiary. Similarly, in *J. Louis Crum Corp. v. Alfred Lindgren, Inc., supra,* a contractual provision between the owner and a contractor that the contractor would be responsible for damage to other contractors' property caused by his fault or negligence was held to make the other contractors third party beneficiaries of the contract.

Candidly, we find it hard to imagine that if such express evidence of intent existed, the plaintiff would not have so informed us in the pleadings. Be that as it may, we agree with plaintiff that the question of intent is a fact issue which should not be resolved by this court before trial. We hold, therefore, that the plaintiff is entitled to present what evidence it can in support of its allegation that the contracts "between and among the defendants and the City" were "specially intended" to benefit it. Such an allegation can only be proved either through express provision in each contract, or through ambiguous contractual language coupled with surrounding circumstances demonstrating an intent that the defendants would assume a direct obligation to plaintiff sufficient to overcome the presumption that absent express declaration, parties do not contract for the benefit of others.

*Count X—Duty to business invitees*

Finally, in Count X plaintiff alleges that the non-city defendants owed a nondelegable duty to plaintiff to exercise the care possessed by members of their professions.

---

4. *See Stephens v. Great Southern Sav. and Loan Ass'n, supra,* holding that where a developer and the defendant agreed that the defendant would lend money to enable the developer to pave the streets of a subdivision, the plaintiff who had agreed with the developer to perform the paving work was a mere incidental beneficiary to the loan agreement and was not entitled to recover damages for defendant's refusal to consummate the agreement.

Although the only significant addition to this count not found in Counts I and II is the word "nondelegable," plaintiff describes Count X in its brief as seeking "to create a duty on the part of respondents arising out of one's duty to keep land safe for business invitees." We admit that we failed to discern that this was the intent of the count. Nevertheless, plaintiff cites two cases in support of its theory, *McDonnell Aircraft Corp. v. Hartman-Hanks-Walsh Painting Co.*, 323 S.W.2d 788 (Mo.1959), and *Schneider v. Southwestern Bell Tele. Co.*, 354 S.W.2d 315 (Mo.App.1962). Those cases deal, however, with the duty of an owner and occupant of a building to exercise due care in maintaining the building in a reasonably safe condition for the use of an employee of an independent contractor who occupies the position of a business invitee. We find no case extending that duty to designers, contractors, and suppliers of component parts who do not occupy a building and who, because of that non-occupancy, have no opportunity to maintain the building, safely or otherwise.

Plaintiff states no cause of action against these defendants under Count X.

### Conclusion

For the foregoing reasons, we hold that the plaintiff's appeal from the trial court's dismissal of Counts I—V, IX and X was timely; that plaintiff's Counts I and II state a cause of action against all non-city defendants for negligent interference with a tenant's right to use and enjoy a leasehold within the limitations we expressed in Counts I and II of the *Chubb Group* opinion; that Count III for products liability was properly dismissed as to all non-city defendants with the exceptions of Kansas City Structural Steel Co. and Bethlehem Steel Corp.; that Count IV for implied warranty was properly dismissed as to all non-city defendants due to lack of privity; that Count V, liberally construed, does state a cause of action for negligent misrepresentation within the narrow limitations of Restatement (Second) of Torts sec. 552 (1977); that in Count IX plaintiff states a cause of

action as a third party beneficiary of contracts between and among the defendants and the city, although plaintiff now bears the burden of proving that the parties to those contracts "specially intended" to benefit it; and that Count X was properly dismissed for failure to state a cause of action. Accordingly, we remand this case to the trial court for further proceedings consistent with this opinion.

All concur.