STATE of Missouri, ex rel. E.A. MARTIN MACHINERY COMPANY, a Missouri General Business Corporation, Plaintiff–Respondent,

v.

LINE ONE, INC., a Texas Corporation doing business in the State of Missouri, Defendant,

and

Hartec Corporation, a Foreign Corporation doing business in the State of Missouri, and The Ohio Casualty Insurance Company, a Foreign Insurance Company doing business in the State of Missouri, Defendants–Appellants.

No. 24901.

Missouri Court of Appeals,
Southern District,
Division One.

Aug. 19, 2003.

---

Stuart H. King, David C. Replogle, William H. McDonald & Associates, P.C., Springfield, for Appellant.

William L. Mauck, Yates, Mauck, Bohrer, Elliff & Croessman, P.C., Springfield, for Respondent.

PHILLIP R. GARRISON, Judge

This case involves a contract dispute arising out of a public works project. Hartec Corporation ("Hartec") and The Ohio Casualty Insurance Company ("Ohio Casualty") (collectively, "Appellants") allege in two points on appeal that the trial court erred in entering judgment against them and in favor of E.A. Martin Machinery Company ("Respondent") for $44,203.37. We agree and reverse the trial court's judgment.

On June 20, 1997, Public Water Supply District Number 2 of McDonald County, Missouri ("the District") entered into a contract ("Bonded Contract") with Still Construction Company, Inc. ("Still") whereby Still was to serve as the general contractor responsible for building water distribution lines for a public works project owned by the District. The same day, a payment bond in the amount of $1,735,878 was executed by the District, Still, and Ohio Casualty wherein Ohio Casualty agreed to serve as surety for the project. Ohio Casualty apparently also executed a performance bond guaranteeing completion of the project, although the record does not indicate when this occurred.

In preparation for work on the project, Still entered into a subcontract with Line One, Inc. ("Line One") for the excavation and installation of the pipeline. Line One, in turn, entered into at least two contracts with Respondent, on June 10, 1998 and again on July 20, 1998, for the rental of heavy construction equipment to complete Line One's work on the project. Line One failed to pay Respondent a significant portion of the rent due under these contracts, as well as for repair services provided by Respondent during the course of Line One's work. This past due amount, some $28,120.49, plus interest, served as the basis for the suit underlying this appeal.

In or around February 1998, Still informed the District and Ohio Casualty of financial difficulties it was experiencing which could jeopardize its ability to complete the project. Eventually, Still was defaulted by the District when Still acknowledged its inability to complete its work. As a result of Still's default, Ohio Casualty, as surety for the project, entered into an agreement ("Completion Agreement") with Hartec, by which Hartec committed "to complete the Project pursuant to the terms and conditions of the Bonded Contract." On July 17, 1998, the substitution of Hartec as the general contractor for the project was ratified by the District and Ohio Casualty in a document entitled

"Contract Takeover Agreement" ("Takeover Agreement").

On March 18, 1999, Respondent presented a written claim against the payment bond to Ohio Casualty in which Respondent sought payment of Line One's indebtedness from the rental contracts and repairs performed by Respondent. No written notice or request for payment was sent to Hartec or the District. On January 18, 2000, Respondent filed a petition in the trial court naming Line One, Hartec, and Ohio Casualty as defendants and seeking damages in the amount of Line One's indebtedness, plus interest and attorney fees.

Respondent's petition contained three counts: Count I named only Line One as defendant and sought damages for breach of contract in the amount of $34,565.01. Count II incorporated the allegations of Count I by reference, named Appellants as defendants, and sought a judgment establishing the joint and several liability of Appellants for the indebtedness of Line One. In Count III, Respondent repeated the allegations of Counts I and II, but founded its claim upon Section 34.057,[1] the "Public Works Prompt Pay Statute." Pursuant to that statute, Respondent sought from Appellants and Line One attorney fees and court costs in addition to its actual damages. *See* Section 34.057(6).

On June 23, 2000, Appellants filed their amended answer to Respondent's petition, in which they submitted the affirmative defense that Respondent had failed to state a claim upon which relief could be granted in that Respondent had failed to comply with the payment bond's notice requirements prior to filing its petition. Appellants also filed a cross-claim against Line One seeking indemnification from Line One should Respondent be granted judgment against Appellants.

Line One failed to appear or respond to Respondent's petition. On June 5, 2000, Respondent filed a motion for interlocutory order and judgment by default against Line One. On December 27, 2000, the trial court entered a judgment by default against Line One as to Count I of Respondent's petition in the amount of $28,120.49 plus interest and costs. Prior to trial of the remaining two counts, Respondent voluntarily dismissed Count III with prejudice, in consideration of Appellants' agreement not to seek a jury trial.

Trial of the remaining count, Count II, was had on January 7, 2002. On April 1, 2002, the trial court entered is final judgment in the amount of $44,203.37 against Appellants as to Count II of the petition, and against Line One, in the same amount, as to Appellant's cross-claim. The trial court did not render findings of fact or conclusions of law in its judgment. This appeal follows.

■■■ In a court-tried case, "[t]he decree or judgment of the trial court will be sustained by the appellate court unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law." *Kimberling North, Inc. v. Pope*, 100 S.W.3d 863, 871 (Mo.App. S.D.2003) (quoting *Ryan v. Spiegelhalter*, 64 S.W.3d 302, 305 (Mo. banc 2002)). Where, as here, the trial court's judgment included no findings of fact or conclusions of law, "the judgment is to be upheld on any reasonable theory within the pleadings and supported by the evidence." *Schaefer v. Rivers*, 965 S.W.2d 954, 956 (Mo.App. S.D. 1998).

**1.** References to statutes are to RSMo (2000) unless otherwise indicated.

In the first of Appellants' two points, they allege that the trial court erred in granting judgment against them because Respondent failed to submit substantial evidence that it complied with the express notice provisions of the payment bond.[2] Specifically, Appellants contend that notice of Respondent's claim against Line One on their rental agreements was not presented within ninety days to at least two of the three parties to the payment bond and that Respondent could not, therefore, commence any action against Appellants seeking payment of Line One's debt.

The payment bond contains the following provision:

PROVIDE[D] FURTHER, that no suit or action shall be commenced hereunder by any claimant: (a) Unless claimant ... shall have given written notice to any two of the following: [the general contractor], the [District] or [Ohio Casualty] ... within ninety (90) days after such claimant did or performed the last of the work or labor, or furnished the last of the materials for which said claim is made, stating with substantial accuracy the amount claimed and the name of the party to whom the materials were furnished, or for whom the work or labor was done or performed.

In order to comply with this provision, Respondent must have provided written notice to either Hartec, as the completing general contractor, or the District in addition to its notice to Ohio Casualty. This did not occur. On March 18, 1999, Respondent presented a written claim against the payment bond to Ohio Casualty in which Respondent sought payment of Line One's indebtedness for the rental contracts and repairs performed by Respondent. No written notice or request for payment was sent to Hartec or the District.

■ Moreover, in order to comply with the express qualifications of the payment bond, Respondent must have done or performed the last of its labor or provided the last of the materials to Line One on or later than December 19, 1998. The last of Line One's work on the project was completed on November 19, 1998. Respondent's invoices to Line One indicate the last of Respondent's equipment was returned on December 1, 1998. An invoice dated December 31, 1998 indicates that repair work on the returned equipment was completed on December 2, 1998.[3] It does not appear from the record that Respondent provided any equipment or services on or later than December 19, 1998, ninety days prior to Respondent's written notice to Ohio Casualty. Based on the foregoing, we are persuaded by Appellants' argument under their first point that Respondent failed to provide substantial evidence proving it had complied with the terms of the payment bond.[4]

2. Appellants' point refers to the "performance bond," which is a different instrument than the payment bond. The performance bond does not appear in the record before us and, at any rate, the argument section of Appellants' brief makes clear the fact that they intend to base their argument upon the notice provisions of the payment bond, and that the mention of the performance bond in the point itself is a drafting error.

3. The record is silent as to the return date or the date of any repair to another piece of equipment rented to Line One by Respondent, an excavator.

4. While Respondent does not question the validity of the payment bond's "ninety day" provision, we note that the question has been addressed previously. Faced with the issue whether "a provision [is] valid and enforceable in a labor and material payment bond which requires the claimant to give written notice within ninety days after [the claimant] furnishes the last of the materials for which claim is made[,]" the eastern district of this court answered in the affirmative. *Reorga-*

Our inquiry does not, however, end with our agreement with Appellants that the notice provisions of the payment bond were not adhered to by Respondent. Respondent contends that the payment bond did not provide the basis for its claim for damages under Count II of its petition. Respondent argues "there is a separate and distinct source of indemnity provided in the terms of Section 4.01 of the Completion Agreement ... which compels payment by [Appellants] [and] is not subject to the restrictions imposed by the [p]ayment [b]ond." It is this contractual provision, and it alone, according to Respondent, that formed the basis for its claim under Count II of its petition.

Section 4.01 of the Completion Agreement provided as follows:

4.01. *Indemnification by Hartec.* Hartec assumes all responsibility for any and all liabilities, claims, damages, losses, suits, and demands of whatsoever nature against [Ohio Casualty], whether known or unknown, anticipated or not, that occur after the date hereof with respect to the completion of the Bonded Contract and the Project, including, but not limited to, any liabilities, claims, damages ..., losses, suits, and demands of whatsoever nature with respect to any work performed, [or] completion costs incurred after [the] date hereof by Hartec with respect to the Bonded Contract and the Project. Hartec will indemnify and hold [Ohio Casualty], its officers, directors, employees, attorneys, consultants, and agents free and harmless from and against any and all actions, causes of action, suits, losses, liabilities, and damages and expenses in connection herewith, including, without limitation,

counsel fees and disbursements ... incurred by [Ohio Casualty] as a result of, or arising out of, or relating to Hartec's obligations with respect to the Bonded Contract, the Project, and/or the breach of this agreement by Hartec.

According to Respondent, its claim under Count II "arises strictly from the contractual undertakings of Hartec when it became the completing contractor." In passing, Respondent hints at an argument that while Respondent was not a party to the Completion Agreement, Count II was supported by Respondent's status as a third-party beneficiary of that contract.

Respondent's argument is flawed in several respects. First, Paragraph 20 of Count II alleged that "the obligation of ... Hartec ... and [Ohio Casualty] **upon the [b]onds aforesaid** are, *inter alia* to ... promptly make payment for materials incorporated, consumed or used in connection with the work set forth in the contract referred to above*" (bold emphasis added, italicized emphasis in original). Respondent's use of the phrase "upon the [b]onds aforesaid" lends credence to Appellants' argument that Count II was based upon a payment bond claim, and not a contractual claim founded upon a third-party beneficiary theory. Moreover, the italicized language in Paragraph 20 tracks significantly with language found in the payment bond describing the obligations of Appellants.

Moreover, were we to grant that Count II contained within it sufficient references to the Completion Agreement to suggest a claim under that contract, Count II would be, at best, a hybrid argument based upon two separate theories of recovery—a payment bond claim and a claim under the Completion Agreement. Rule 55.11[5] states that

---

nized Sch. Dist. R–3, Potosi, ex rel. and for Use and Benefit of Ahrens & McCarron, Inc. v. L.D. Compton Constr. Co., 483 S.W.2d 674, 675 (Mo.App.St.L.Dist.1972).

**5.** References to rules are to Missouri Rules of Civil Procedure (2002) unless otherwise indicated.

[a]ll averments of claim or defense shall be made in numbered paragraphs, the contents of each of which shall be limited as far as practicable to a statement of a single set of circumstances.... Each claim founded upon a separate transaction or occurrence and each defense other than denials shall be stated in a separate count or defense whenever a separation facilitates the clear presentation of the matters set forth.

Thus, even the most lenient reading of Count II from Respondent's perspective results in an averment containing two commingled alleged bases of recovery, which is specifically prohibited by rule. *See Gallatin v. W.E.B. Restaurants Corp.*, 764 S.W.2d 104, 105 (Mo.App. W.D.1988); *Boquist v. Montgomery Ward & Co., Inc.*, 516 S.W.2d 769, 773–74 (Mo.App.K.C.Dist. 1974).

Second, it is not at all clear that Respondent properly pleaded in Count II its alleged claim as a third-party beneficiary of the Completion Agreement. Rule 55.22 states that "[w]hen a claim or defense is founded upon a written instrument, the same may be pleaded according to legal effect, or may be recited at length in the pleading, or a copy may be attached to the pleading as an exhibit." *See Missouri Farmers Ass'n, Inc. v. Todd*, 667 S.W.2d 736, 737 (Mo.App. E.D.1984); *Chubb Group of Ins. Companies v. C.F. Murphy & Associates, Inc.*, 656 S.W.2d 766, 777 (Mo.App. W.D.1983); *Volume Services, Inc. v. C.F. Murphy and Associates, Inc.*, 656 S.W.2d 785, 795 (Mo.App. W.D.1983) (plaintiff held to have met the requirements of Rule 55.22 and properly averred that it was a third-party beneficiary of a contract when it pleaded that the contract was "specifically intended" to benefit it). Under this rule, Respondent had the option, in stating any averments under Count II arising from the Completion Agreement, to either (1) state the legal effect of the Completion Agreement vis à vis Respondent and Appellants (for example, a third-party beneficiary relationship), (2) recite the Completion Agreement in its entirety within Count II, or (3) attach a copy of the Completion Agreement to the petition. Respondent did not exercise any of these options. Indeed, nowhere in Count II does there appear the phrase "third-party beneficiary," or any language that could reasonably be construed to invoke that concept. There also is not a single reference to the Completion Agreement, nor is it quoted or attached to the petition. "Consequently, the provisions of the [Completion Agreement] ... were not for consideration by the trial court nor this court in deciding whether the petition stated a cause of action." *Egan v. St. Louis San Francisco Ry. Co.*, 581 S.W.2d 939, 941 (Mo.App. S.D.1979). We agree with Appellants that Respondent's Count II failed to set forth a cause of action as to the Completion Agreement, much less allege that it was an intended third-party beneficiary of that agreement.

Third, the evidence here fails to support a third-party beneficiary theory.

There are three types of third-party beneficiaries to a contract: donee beneficiaries, creditor beneficiaries, and incidental beneficiaries. "A donee beneficiary is one upon whom the promisee intends to confer the benefit of performance of the contract although such performance will not discharge a preexisting duty or obligation to the beneficiary." A creditor beneficiary is "one upon whom the promisee intends to confer the benefit of the performance of the contract and thereby discharge an obligation or duty the promisee owes the beneficiary." An incidental beneficiary is one "who will be benefited by perfor-

mance of a promise but who is neither a promisee nor an intended beneficiary." Only donee and creditor beneficiaries have enforceable rights under a contract.

*OFW Corp. v. City of Columbia,* 893 S.W.2d 876, 879 (Mo.App. W.D.1995) (internal citations omitted); *see also Kansas City N.O. Nelson Co. v. Mid–Western Constr. Co. of Mo., Inc.,* 782 S.W.2d 672, 677 (Mo.App. W.D.1989). Of the two classes of potential third-party beneficiaries with standing to bring a claim—donee and creditor beneficiaries—only donee beneficiary status could arguably apply to Respondent. We need not, however, address that possibility directly because to successfully claim status as a third-party beneficiary of a contract,

> the terms of the contract must directly and clearly express an intent to benefit an identifiable person or class. In the absence of such an express declaration, there is a strong presumption that the parties contracted only for themselves and not for the benefit of others. "It must be shown that the benefit to the third party was the cause of the creation of the contract." "Only those third parties for whose primary benefit the contracting parties intended to make the contract may maintain an action." This court may not speculate from the language in the contract as to whether the contracting parties intended to make the plaintiff a third-party beneficiary.

*OFW Corp.* at 879 (internal citations omitted). Thus, a would-be third-party beneficiary plaintiff must plead that it was the primary intended beneficiary of a contract in order to state successfully a claim under the contract. *Volume Services, Inc.* at 795.

The only parties to the Completion Agreement upon which Respondent relies for its third-party beneficiary claim were Appellants. Section 4.01 of that contract, quoted in full above and entitled "Indemnification by Hartec," seems clearly intended to primarily benefit Ohio Casualty, who gained indemnification from Hartec from "any and all liabilities, claims, damages, losses, suits, and demands of whatsoever nature against [Ohio Casualty] ... with respect to the completion of the Bonded Contract[.]" It appears clear to us that the intended beneficiary of at least this portion of the Completion Agreement was Ohio Casualty; Respondent is, at best, an incidental beneficiary of this provision, leaving it without recourse to bring an action as a third-party beneficiary of the contract. *See OFW Corp.* at 879.

■■■ Summarizing, we agree with Appellants in holding that Respondent did not comply with the specific provisions of the payment bond regarding the written notice prerequisite to a suit by any claimant under that bond. Further, we reject Respondent's argument that these provisions are immaterial because its claim in Count II was not based upon the payment bond but, instead, upon its third-party beneficiary status under the Completion Agreement. To the extent that Count II states any claim under a contract other than the payment bond, it does so in violation of Rule 55.22 in that the claim competes with a clear payment bond claim within the same count in the petition, making it problematic to ascertain the true nature of Respondent's original complaint against Appellants. In any event, were we to grant that Respondent properly pled or argued a third-party beneficiary claim here or in the trial court, we find the law and the record before us would not bear the weight of such an argument. In light of the foregoing, we hold that the trial court's judgment was against the weight of the evidence and misapplied the law. *See Kimberling North, Inc.* at 871.

The judgment of the trial court is reversed.[6]

MONTGOMERY, P.J., and BARNEY, J., concur.

**6.** Its first point being dispositive of this appeal, Appellants' second point is not addressed herein.