THOMAS G. SNAVELY CO. ET AL. *v.* BROWN CONSTR. CO. ET AL.

(Nos. 49332 and 49333—Decided August 30, 1968.)

Common Pleas Court of Allen County.

*Messrs. Bogart & Murray,* for plaintiffs.
No appearance for defendant Brown Construction Company.
*Mr. Fred W. Gooding* and *Messrs. Gooding, Evans & Huffman,* for defendant Ohio Steel Foundry Company.

*Mr. William C. Leonard* and *Messrs. Cory, Boesel, Leonard & Cory,* for defendant American Bridge Company.

HITCHCOCK, J. (By assignment from Paulding County.) These two cases have different plaintiffs but the same defendants. Counsel for defendant Brown Construction Company (Brown) have withdrawn and although Brown was notified of a hearing held April 26, 1968, to consider motions to dismiss the second amended petition of each plaintiff filed by the other defendants, no one appeared for Brown.

The motions to dismiss will be overruled.

As demurrers to an amended petition were sustained by another judge, defendants Ohio Steel Foundry Company (Foundry) and American Bridge Company (American) contend that both of the second amended petitions now before the court contain no essential new material so should be dismissed as the equivalent of a failure to plead further. Consequently, each motion to dismiss is the equivalent of a demurrer addressed to the second amended petition, and both are treated as such.

The court has considered these cases anew and has reached the conclusion that the motions to dismiss should be overruled, even though the second amended petition differs little from the prior amended petition. The petitions now before the court repeat the general allegations and make it clear beyond peradventure of doubt that all contracts involved used "American Institute of Architect printed form contracts, all containing identical conditions with the exception of the typed in provisions" and all "provided for the cooperation and coordination of all of the defendants, as to the timing of their individual work phase in the construction, so that the job might be completed as scheduled, all of which contract document schedules" each "plaintiff relied upon."

The motions are based upon the theory that plaintiffs have not as to them stated a cause of action as third party beneficiaries of a contract or contracts to which plaintiffs were not a party. They require the court to consider the

facts plead as true and in that light determine if they are of legal consequence. With Brown, of course, plaintiffs had their individual subcontracts.

The amended petitions tell us that sometime prior to early 1961 defendant Foundry determined to build a sizeable factory building in Lima, Ohio. It made a general written contract with defendant Brown for this purpose which was reduced to writing June 8, 1961. This general contract contained provisions reserving to Foundry the right to award other contracts it "might desire," pursuant to which it made one contract with defendant American for the fabrication and erection of structural steel. These two contracts recite that time is of the essence and provide schedules for the accomplishment of various sections of the work required. They further provide that mentioned time schedules apply to "all of the various sub-trades." Plaintiff Thomas G. Snavely Company (Snavely) on May 15, 1961, entered into a contract with Brown to do for $78,500 the required masonry work which was to be begun July 17, 1961; the exterior work was to be complete by October 16, 1961; and the interior by December 1, 1961. Plaintiff Lake Erie Electric, Inc. (Electric), also entered into a contract with Brown to do for $129,000 the required electric work which was to be started July 1, 1961, and be completed by December 1, 1961. This contract was made in May 1961, but not reduced to writing until November 7, 1961. The contracts of the plaintiffs were, as the others, written on standard A. I. A. forms reciting that time was of the essence and providing time schedules for beginning and completion of the various kinds of work necessary to be accomplished. Said time schedules bear this inscription: "Submitted 5-3-61."

By reason of delay caused by nonobservance of the time schedules in the contracts with Foundry, upon which each plaintiff relied when making its subcontract with Brown, plaintiff Snavely was unable to begin work required under its subcontract on July 17, 1961, as scheduled. It actually began work on August 20, 1961, which was further delayed so that it was not completed until in June 1962.

For the same reason Electric was unable to begin work required under its subcontract about July 1, 1961, as scheduled. It actually began work on August 1, 1961, which was further delayed so that it was not completed until early September 1962.

That the delay caused by the nonobservance of the time schedules set out in these contracts caused plaintiffs substantial increase in their costs by reason of winter work, labor, supervision, material, payroll, taxes, insurance, travel, and subsistence, general overhead, and other miscellaneous items to the damage of Snavely in the amount of $17,375.78 and to the damage of Electric in the amount of $41,628.58, all of which is prayed for with interest from May 16, 1963.

In part, the Restatement of the Law of Contracts, 1932 recites:

"Section 133. (1) Where performance of a promise in a contract will benefit a person other than the promisee, that person is, except as stated in subsection (3):
"* * *

"(b) a creditor beneficiary if no purpose to make a gift appears from the terms of the promise in view of the accompanying circumstances and performance of the promise will satisfy an actual or supposed or asserted duty of the promisee to the beneficiary, or a right of the beneficiary against the promisee which has been barred by the Statute of Limitations or by a discharge in bankruptcy, or which is unenforceable because of the Statute of Frauds;

"(c) An incidental beneficiary if neither of the facts stated in Clause (a) nor those stated in Clause (b) exist.
"* * *

"Section 134. The statements in Sections 135-147 are applicable both to absolute and conditional promises in either formal or informal contracts.
"* * *

"Section 136. (1) Except as stated in Sections 140, 143.

"(a) a promise to discharge the promisee's duty creates a duty of the promisor to the creditor beneficiary to perform the promise;

"(b) a promise to discharge the promisee's duty creates also a duty to the promisee;

"(c) whole or partial satisfaction of the promisor's duty to the creditor beneficiary satisfies to that extent the promisor's duty to the promisee;

"* * *

"(2) Whether the extent of the promisor's duty to the creditor beneficiary is measured by the promisee's actual, supposed, or asserted duty to the beneficiary at the time of the making of the contract, or at some other time, depends upon the interpretation of the promise.

"Section 139. It is not essential to the creation of a right in a donee beneficiary or in a creditor beneficiary that he be identified when a contract containing the promise is made.

"* * *

"Section 141. (1) A creditor beneficiary who has an enforceable claim against the promisee can get judgment against either the promisee or the promisor or against each of them on their respective duties to him. Satisfactoin in whole or in part of either of these duties, or of judgments thereon, satisfies to that extent the other duty or judgment.

"(2) To the extent that a creditor beneficiary satisfies his claim from assets of the promisee without resorting to the promisor's contract the promisee has a right of reimbursement from the promisor, which may be enforced directly and also, if the creditor beneficiary's claim is fully satisfied, by subrogation to the claim of the creditor beneficiary against the promisor, and to any judgment thereon and to any security therefor of the promisor.

"* * *

"Section 143. A discharge of the promisor by the promisee in a contract or a variation thereof by them is effective against a creditor beneficiary if,

"(a) The creditor beneficiary does not bring suit upon the promise or otherwise materially change his position in reliance thereon before he knows of the discharge or variation, and

"(b) the promisee's action is not a fraud on creditors.

"Section 144. Unless the case is within the rules mak-

ing contracts voidable for mutual mistake, where performance of a promise in a contract will benefit a person other than the promisee, the promisor's duty is not avoided or limited by an erroneous belief of the promisor or of the promisee as to the existence or extent of a duty of the promisee to the beneficiary.

"* * *

"Section 147. An incidental beneficiary acquires by virtue of the promise no right against the promisor or the promisee."

The Supreme Court of Ohio has recognized the Restatement as a most persuasive theoretical statement of the law of Ohio, at least if not in conflict with some established precedent. See *Visintine & Co.* v. *New York, C. & St. L. R. Co.* (1959), 169 Ohio St. 505. Consequently, it seems clear that the contracts between Foundry and Brown and Foundry and American amount to one contract for the construction of a factory building. Under this contract Foundry is a promisee and Brown and American the promisors as a general proposition but as to mutual promises beneficial to plaintiff each may be regarded as either promisee or promisor in respect to the fixing of legal liabilities.

In the accomplishment of this construction the parts played by plaintiffs were quite necessary and known to the promisee and promisors from the outset. Certainly there was no purpose to make a gift to plaintiffs. Just as certainly it was the duty of Foundry to provide opportunity for plaintiffs to perform the work in substantial compliance with the schedule agreed to by it and the promisors and upon which plaintiffs were entitled to rely, because they, too, were bound by it, in performing for Brown. Had plaintiffs caused delay and damage to defendants in performing their obligations under their respective subcontracts, it would surely not be said that defendants Foundry and American were only incidental beneficiaries of the contracts between plaintiffs and Brown. In fact situations as here, practical realities should not be ignored. Presumably plaintiffs had competition in the bidding for these contracts. Both they and their competitors were entitled to believe that the stated time schedules for performance by

the subtrades, the recitations requiring cooperative endeavor, and the provisions stating that time was of the essence were bona fide and to be taken into consideration when making or attempting to make their subcontracts with Brown.

Consequently, the defendant's present assertion that plaintiffs were not entitled to rely on the belief that there would be substantial compliance by them in regard to mentioned matters seems extremely unbecoming. Writings purporting to be contracts which lack substantial mutuality in obligation are hardly contracts meriting great respect. Consequently, the court finds unpersuasive defendants' contention that the motions should be sustained because at best plaintiffs are only incidental beneficiaries with no right to recovery here.

The Supreme Court of Ohio has declared that in the circumstances related plaintiffs fill the definition of "creditor beneficiaries." See *Visintine & Co.* v. *New York, C. & St. L. R. Co., supra*. The fact that in this case the Director of Highways of the State of Ohio occupied the position here occupied by Foundry and enjoyed immunity as a representative of the sovereign state of Ohio in no way makes the doctrine of third party beneficiary inapplicable to the facts of this case.

In *Visintine* Ohio's sovereign immunity was an important fact from the standpoint of the sources available for recovery of damages. Absent sovereign immunity, however, the Ohio Supreme Court made it clear that recovery should be had against the state of Ohio in the person of its Director of Highways, if he had failed to discharge his obligations under other contracts to which Visintine was not a party but which caused Visintine damage in a situation where all recognized such failure would vitally affect one in Visintine's position.

This language from the *Visintine case*, beginning at page 509 of the official reporter bears repeating:

"It is urged by the defendants that the contracts between them and the state of Ohio do not clearly show an intent to benefit the plaintiff, and that such an intent cannot be implied. And several cases from outside Ohio to

that effect are cited to us by the defendants. However, there appears to be no unanimity of opinion on this subject. In 4 Corbin on Contracts, 20, Section 776, the following is said about the intention to benefit the third party:

" 'It is clear that if the "primary" and "paramount" purpose seems to be to benefit the third person, as in the case of all sole and donee beneficiaries, he should have an enforceable right as the court says. But rights have not been limited so narrowly as this. In the case of most creditor beneficiaries, it is the purpose and intent of the promisee to procure the discharge of his obligation. The attainment of this end involves benefit both to himself and to his creditor. This "benefit" he intends to bring about as an entirety, having no idea in his own mind as to its division between the persons receiving it or as to "primary" or "paramount" purpose. Neither should the court make such a division. It should content itself with bringing about the entire result that the promised performance would attain. The result was the "paramount" object of desire and that result was the "primarily" intended result, including not only the ultimate end in view but also the means used to bring it about. The great majority of the courts attain this desired result in full by giving a remedy to the creditor against the promisor. The question is not "whose interest and benefit are primarily subserved," but what was the performance contracted for and what is the best way to bring it about.'

"In the light of that statement, we concur in the analysis by the Court of Appeals, where, in the opinion by Judge Miller, it is said:

" '* * * We are of the opinion that in considering the railroad contracts and the plans and specifications and sequence of work specifications it is apparent that it was intended to benefit the contractor, as they all provided for co-operation in order that the job might be completed as scheduled. * * * Throughout all contracts it was made plain that the work of Visintine (Snavely and Electric) was dependent upon the performance by the railroads (Brown and American) on their contractural obligations and vice versa. By each performing their obligations in the proper

sequence a benefit was incurred upon the other by permitting them to complete their work in accordance with the terms of their various contracts.'

"Taken altogether, we believe the allegations of the petition are sufficient, as against demurrer, to qualify plaintiff as a beneficiary under the contracts between the defendants and the state of Ohio, particularly in view of the fact that the state is immune from suit for any alleged violations of the duties it assumed under its contract with plaintiff."

In deciding the issue presented the court has also considered numerous other cases. No clearer expression of the problem presented and its analysis has been found than in these words uttered in a case where sovereign immunity was not a factor.

"* * * A third person may sue on a contract made for his benefit between others to the consideration of which he is a stranger. Or stated differently, 'a third person may in his own right and name, enforce a promise made for his benefit even though he is a stranger both to the contract and the consideration.' 17 American Jurisprudence 2d, Contracts, Section 302, at page 722 (1964). 17 A. Corpus Juris Secundum, Contracts, Section 519 (3) (1963). *Burns* v. *Washington Savings* (1965), Miss. 171 So. 2d 322, 324.

"* * * The difficulty is to determine when a particular case comes within the rule. There are hundreds of cases on the subject. * * * Taking the lead among those cases, as for instance, *Smyth* v. *City of New York* , 203 N. Y. 106, 96 N. E. 409, and searching through them for a more definite or more tangible statement of the rule, we think it will be found that the best considered of these cases reason the matter down to this: (1) When the terms of the contract are expressly broad enough to include the third party either by name *or as one of a specified class,* and (2) the said third party was evidently within the intent of the term so used, the said third party will be within its benefits, if (3) the promisee had, in fact, a substantial and articulate interest in the welfare of the said third party in respect to the subject of the contract. Cf. 17 American Jurisprudence 2d,

Contracts, Section 308 (1964).' Ibid., page 325. (Emphasis supplied.)"

Although each of these cases now before the court may not be quite "on all fours" with the *Visintine case*, it seems clear that both are similar enough to be plainly within the rule of the general exception providing a cause of action to creditor beneficiaries. Moreover, it is clear enough that Foundry has, as Ohio in the *Visintine case*, obtained its objective, even though it and others may have failed to abide definite contract provisions.

Exactly in what way each defendant may have caused actionable delay and damage to each plaintiff is matter to be shown by the evidence. Other matters which may be of substance in defense, but do not negative the existence of a cause of action, are irrelevant in passing on a demurrer.

Accordingly, in view of the great delay already occurring in these cases, an order this day is entered upon the journal overruling in each case the motion to dismiss the second amended petition, saving exceptions to all defendants.