J.F., INCORPORATED, Plaintiff-Appellee and Cross-Appellant, v. S. M. WILSON & COMPANY, Defendant-Appellant and Cross-Appellee (Bernard M. Keeney *et al.*, Defendants-Appellees).

Fifth District   No. 5—81—0620

Opinion filed February 3, 1987.—Rehearing denied March 10, 1987.

Dailey & Walker, of Granite City, for appellant.

David M. Duree, of O'Fallon, and Leritz, Reinert & Duree, P.C., of St. Louis, Missouri (David M. Duree, of counsel), for appellee J.F., Incorporated.

JUSTICE WELCH delivered the opinion of the court:

Following a jury verdict in the circuit court of Madison County, the defendant, S. M. Wilson & Company, appeals and the plaintiff, J.F., Incorporated, cross-appeals. The jury returned a verdict in favor of the plaintiff on the theory of third-party beneficiary in the contract between defendant and the Illinois Capital Development Board (Capital). On appeal, defendant raises the issue of whether the contract between Capital and defendant for certain portions of a construction project conferred third-party-beneficiary status upon the plaintiff, who contracted with Capital for other portions of the construction project. We find that the plaintiff was not a third-party beneficiary to the contract between defendant and Capital and accordingly reverse.

In September 1973 Capital awarded separate prime contracts for the construction of two buildings for the Alton Area Career Development Center. In the contract, Capital was called the owner. The Alton Community Unit School District No. 11 became the ultimate user. Capital awarded to plaintiff the heating and electrical contract and to defendant, the general construction contract. Both contracts were for fixed amounts, with identical language and completion dates. General obligations of the parties were set out in the contracts, and the specific contractual requirements were established in the specification book and the drawings. The contract documents specified 500 calendar days for completion, which would have been January 25, 1975. However, because of various delays on the project, the project did not receive a certificate of final acceptance until August 1976.

Since plaintiff incurred costs for various delays, it filed suit against defendant on the contract between defendant and Capital alleging that it had third-party-beneficiary status. Plaintiff also sued the architect and the soils engineer for negligence and Capital on the contract. Plaintiff voluntarily dismissed the soils engineer. The trial court dismissed the suit against Capital, finding that the Court of Claims had exclusive jurisdiction over suits against the State. Defendant counterclaimed on the same theory as the plaintiff.

At the conclusion of the jury trial, the jury returned a verdict against the defendant on the contract count for $37,000 and $5,000 against the plaintiff on the defendant's counterclaim. From this verdict the parties appeal.

Although defendant raises several issues on appeal, the issue which this court finds significant is whether the construction contract between Capital and defendant conferred third-party-beneficiary status upon another prime contractor (J.F., Incorporated) contracting to do other portions of the same project and as such permits J.F., Incorporated to sue upon the contract for delay damages.

■■ The Illinois Supreme Court held in *Carson Pirie Scott & Co. v. Parrett* (1931), 346 Ill. 252, 258, 178 N.E. 498, 501:

> "The rule is, that the right of a third party benefited by a contract to sue thereon rests upon the liability of the promisor, and this liability must affirmatively appear from the language of the instrument when properly interpreted and construed. The liability so appearing can not be extended or enlarged on the ground, alone, that the situation and circumstances of the parties justify or demand further or other liability." (346 Ill. 252, 258, 178 N.E. 498, 501.)

It is not necessary that the contract identify the third party, but rather define the third party by description of a class or be identified at the time of performance is due. (*Altevogt v. Brinkoetter* (1981), 85 Ill. 2d 44, 55-56, 421 N.E.2d 182, 187.) However, since *Carson*, the courts have recognized that the intention of the parties must be gleaned from the contract as a whole and the circumstances surrounding the parties at the time of its execution. *Metro East Sanitary District v. Village of Sauget* (1985), 131 Ill. App. 3d 653, 657, 475 N.E.2d 1327, 1330; *Illinois Housing Development Authority v. Sjostrom & Sons, Inc.* (1982), 105 Ill. App. 3d 247, 254-55, 433 N.E.2d 1350, 1356.

Since the facts of this case are rather unique to Illinois courts, it is important to present an overview of the established cases in the area. In our search, this court has found that the courts have followed a strict interpretation of the rule granting third-party-beneficiary status in construction contract cases.

In *Carson*, the court stated that Carson did have third-party-beneficiary status in the contract between the Danville Hotel and Caldwell & Company. In the contract, Carson was listed as a supplier of linens to the hotel. When the hotel did not pay Carson for the linens, the court stated that the intention of the parties to the agreement was not only to install the listed furnishings into the hotel but also to pay for them if the hotel company did not. Thus, the court found that the parties in-

tended to directly benefit the third party, Carson.

In *Searles v. City of Flora* (1906), 225 Ill. 167, 80 N.E. 98, the court did not find third-party-beneficiary status for the subcontractors and materialmen. When Searles entered into a bond contract with National Surety Company to secure the city of Flora from liens for labor and equipment furnished on the city project, the court found that when Searles bought material on credit for the project, it lacked authority. The court stated that the contract between the city of Flora and Searles intended Searles to pay for the items upon delivery. The court did not find that the materialmen had third-party-beneficiary status and as such did not permit the subcontractors and materialmen to sue on the bond agreement.

In the recent case of *Metro East Sanitary District v. Village of Sauget*, this court has continued to strictly interpret third-party-beneficiary status. In *Metro East*, this court did find that the contract between the village of Sauget and the various municipal corporations did intend to directly benefit the third party—the attorney—because the agreement specifically referred to the payment of such fees. The court found that "the parties anticipated that attorney services would be provided on credit and desired to make express arrangement for payment thereof." (*Metro East Sanitary District v. Village of Sauget* (1985), 131 Ill. App. 3d 653, 658, 475 N.E.2d 1327, 1330.) Thus, the court found that the attorney had third-party-beneficiary status and may sue on the contract.

■ From these cases, this court finds that it must look at the circumstances surrounding the contract when the parties entered into the contract and must look at the contract itself in order to properly assess the intentions of the parties. This court will not extend liability or interpret the contract to extend liability because the situation and circumstances of the parties demand further or other liability. The record reveals the following facts.

■ Since the time of the bidding, the party to directly and solely benefit by each of the contracts was the ultimate user, the Alton Community Unit School District No. 11. Although defendant accepted the contract with the knowledge that another contractor would be awarded a separate contract for the heating and ventilation, the defendant did not intend to extend a direct benefit to the plaintiff by bidding on and accepting the contract. The relationship between Capital and defendant was a business arrangement. If anyone were to benefit or lose directly by the efficient and timely progress of the project, it would be the Alton Community Unit School District No. 11. Plaintiff would benefit incidentally by defendant's good business judgment and efficient and

effective control over its end of the project. If defendant had intended to directly benefit plaintiff, the initial completion date established by the defendant would not have been two months behind schedule. If plaintiff was considered a third-party-beneficiary, then when defendant had projected a later completion date, it "purposely" and "thoughtlessly" exposed itself to liability.

Next, the contract itself reveals that plaintiff was not an intended beneficiary. Plaintiff was neither mentioned in the contract nor in any way sufficiently described in the contract as any type of beneficiary. However, the contract does reveal that the parties realized that they would incur delays caused by other contractors during the construction of the project. To remedy these possible delays, the contract provides change orders. A change order is a written order which authorizes a change on the work or an adjustment in the contract sum and in the contract time. After the party submits the change order to the architect (representative of Capital) and the owner (Capital) and then both the architect and owner approve the changes, the contract will be adjusted accordingly. Thus, this court finds that this contract provision does not intend to make the plaintiff a third-party beneficiary but rather the above-mentioned contract provision reinforces the separate contract awarding procedure and provides a remedy for potential delays.

Furthermore, this court finds that if the owner failed to make the site available to the contractor in time for the contractor to do its work, the contractor may sue the owner. (See *W. H. Stubbings Co. v. World's Columbian Exposition Co.* (1903), 110 Ill. App. 210.) In this case, the prime contractor may sue the State in the Court of Claims (Ill. Rev. Stat. 1985, ch. 37, par. 439.1 *et seq.*) for its failure to properly supervise the construction project. (Ill. Rev. Stat. 1985, ch. 127, par. 780.04.) Even if the contract contained a no-damage-for-delay provision, a prime contractor may sue and recover from the owner for delay damages caused by another prime contractor. (*United States Steel Corp. v. Missouri Pacific R.R. Co.* (8th Cir. 1982), 668 F.2d 435, 438-40.) Thus, the appropriate procedures for a prime contractor are change orders and possible lawsuit in the Court of Claims.

These provisions and statutes reinforce the intention of the parties that the prime contractors are not third-party beneficiaries of each other's contract with the State. In addition, these procedures also provide appropriate forums for the various damages without a possibility of multiple suits. Without these contract provisions and statutes, the prime contractor may seek additional relief by filing a cause of action in a court of general jurisdiction after receiving relief through change

orders and then eventually seeking further relief by filing a lawsuit against the State in the Court of Claims. From these actions, the number of suits would become absurd, especially where more than two prime contractors are involved.

■ However, the plaintiffs argue that a multiprime contract imposes a reciprocal relationship on each of the contractors "to timely perform its part of the project, to coordinate with other contractors its efforts to that end, and to not interrupt or impede the execution of each contractor's work" and as such gives each third-party-beneficiary status in each other's contract. Although this court recognizes that in order for a project with multiprime contractors to be completed as specified in the contract, mutual responsibility of the contractors is essential. However, this court does not find that this contract provision alone or with the other provisions grants third-party-beneficiary status. The plaintiff does cite several cases from other jurisdictions for support of its argument. The cited cases do interpret similar mutual-responsibility-of-contractors provisions but have produced various results. Further, each case is factually distinguishable from this case.

In *M. T. Reed Construction Co. v. Virginia Metal Products Corp.* (5th Cir. 1954), 213 F.2d 337, the Fifth Circuit Court of Appeals held that M. T. Reed was a direct beneficiary of the contract between the State Building Commission and Virginia Metal. The court based its decision on the fact that the contracts obligated the two prime contractors to cooperate with each other and coordinate their work with one another. The court found that "[t]he building could not have been completed without such mutual obligation on the part of each of the contractors, and the obligation so to do was a part of the consideration that induced each of the contractors to undertake its particular job at the agreed price." (213 F.2d 337, 338.) However, at that time, the parties agreed that the State of Mississippi could not be sued and that the court could not make a contract between the parties. Most importantly, each contract had a provision which stated "that any cost caused by defective or ill-timed work should be borne by the party responsible therefor." However, no such situation exists in this case. One, the State is not immune and a lawsuit may be commenced in the Court of Claims; two, the contract provided for recovery for delay damages through change orders; and three, the contract does not contain a provision regarding responsibility for delay damages. In *M. T. Reed*, the court acted properly. However, in this case, the facts are substantially dissimilar and do not warrant granting third-party-beneficiary status.

In *Visintine & Co. v. New York, Chicago & St. Louis R.R. Co.* (1959), 169 Ohio St. 505, 160 N.E.2d 311, the Supreme Court of Ohio

held that a contractor is a "creditor beneficiary" in a co-prime contractor situation. In *Visintine*, the State entered into another, separate contract with the railroads to perform certain grade-crossing elimination and entered into a separate contract with a contractor for other work on the same project. The court found that the plaintiffs were beneficiaries because the State was immune from a lawsuit for any alleged violation of the duties it assumed under its contract with the plaintiff. In this case, the State is not totally immune. Furthermore, in *Visintine*, the court found that when the State created its elaborate schedule for all contractors involved, each contractor became a direct "creditor" beneficiary of another's contract with the State. In this case, the State permitted the defendant to draw up the schedule for the various activities on the project. In that schedule, the defendant projected the end of the project as being two months behind the State's deadline date. As stated earlier, if the plaintiff was a third-party beneficiary, the defendant opened itself to a great deal of liability for delays with its proposed schedule.

In *Thomas G. Snavely Co. v. Brown Construction Co.* (1968), 16 Ohio Misc. 50, 239 N.E.2d 759, the Court of Common Pleas of Ohio held that the subcontractors were third-party beneficiaries to the contracts between another prime contractor and the owner as well as the owner and the other prime contractor with whom they had contracts. Again, the Ohio court emphasized the fact that the State had immunity in these lawsuits, which is not the case here.

In *J. Louis Crum Corp. v. Alfred Lindgren, Inc.* (Mo. App. 1978), 564 S.W.2d 544, the Missouri Court of Appeals held that the prime contractor is a direct beneficiary of another prime contractor's contract with the State involving the same project. The court followed the *M.T. Reed Construction Co.* case in finding that "mutually reciprocal contracts in a construction project give rise to a cause of action for delays and damage to other contractors upon the failure of another contractor to honor the basic commitments of the contract with the owner which causes damage to other contracting parties." (564 S.W.2d 544, 548.) However, the contract in *J. Louis Crum Corp.* is dissimilar to one in this case. The contract in *J. Louis Crum Corp.* did not have provisions for change orders but rather provided that the contractor responsible for delays shall bear the costs. No such provision exists in the contract in this case.

In *Hanberry Corp. v. State Building Com.* (Miss. 1980), 390 So. 2d 277, the Supreme Court of Mississippi found that a co-prime contractor was a third-party beneficiary of another co-prime contractor's contract with the State. The situation in *Hanberry* is somewhat similar

to the case at bar. However, in *Hanberry* each of the contracts provided a cause of action from any act of neglect on the part of any other contractor. In this case, the contract provides for change orders and a cause of action for property damage or injury to any of the co-prime contractor's employees or its subcontractor's employees.

In *Broadway Maintenance Corp. v. Rutgers* (1981), 180 N.J. Super. 350, 434 A.2d 1125, the Superior Court of New Jersey also held that a co-prime contractor was a third-party beneficiary to another co-prime contractor's contract with the State. In *Broadway*, the contract relieved Rutgers of any responsibility to supervise and coordinate the project. The contract provision gave that responsibility to the general contractor. The contract also provided that all other contractors must rely on the general contractor for supervision and coordination on the project. Thus, the court correctly found that the plaintiffs were third-party beneficiaries in the contract between Rutgers and the general contractor. However, in this case, the Capital Development Board Act (Ill. Rev. Stat. 1985, ch. 127, par. 771 *et seq.*) gives the State direct responsibility of the supervision of the project. The contract did not have any similar contract provisions as in *Broadway*.

■ In light of the contract provisions, the intention of the parties was not to directly benefit another prime contractor. The primary purpose of each contract was to finish the project as quickly as possible for the use of the Alton Community Unit District No. 11. In reading the contract as a whole, this court finds that the parties realized that other contractors will be involved and that other contractors may cause delays. For this reason, the contract contained added mutual-cooperation provision, time-of-the-essence clause, and most importantly, the change order provision. The primary purpose of the change order was to grant a contractor whose work has been delayed a form of immediate relief, whether money or extension of the time period or both. The legislature has also conferred direct responsibility over the ultimate supervision of the building to Capital, and the contract does not provide otherwise. This court cannot extend or enlarge liability because the parties demand other liability, especially where the contracts provide other more appropriate relief.

For the foregoing reasons, the verdict is reversed and the remaining issues need not be discussed.

Reversed.

JONES and HARRISON, JJ., concur.