**BARTH ELECTRIC CO.,**
Appellant–Plaintiff,

v.

**TRAYLOR BROTHERS, INC. and
Slutsky–Peltz Plumbing and
Heating Co. Appellees–Defendants.**

No. 82A01–8911–CV–482.

Court of Appeals of Indiana,
First District.

April 30, 1990.

Donald J. Graham, Nana Quay–Smith, Bingham Summers Welsh & Spilman, Indianapolis, for appellant-plaintiff.

Joseph W. Annakin, Lacey Terrell Annakin Heldt & Baugh, Evansville, for appellee-defendant Traylor Bros., Inc.

Gerald H. McGlone, McGlone & Bouch, Terre Haute, James F. Butler, III, Jane E. Broadwater, Smith, Currie & Hancock, Atlanta, Ga., for appellee-defendant Slutsky–Peltz Plumbing & Heating Co., Inc.

RATLIFF, Chief Judge.

### STATEMENT OF THE CASE

Barth Electric Company (Barth) appeals the trial court's decision to dismiss with prejudice Barth's complaints against its co-contractors, Traylor Brothers, Inc. (Traylor) and Slutsky–Peltz Plumbing and Heating Company (Slutsky–Peltz) for breach of a construction contract entered into with the Vincennes Community School Corporation (School Corporation) to which Barth claimed to be a third-party beneficiary. We reverse and remand for further proceedings.

### FACTS

Barth is an Indiana Corporation which does business as an electrical contractor. Traylor is a general contractor, and Slutsky–Peltz is a mechanical contractor. Each of these contractors responded to an invitation for the submission of bids by the School Corporation for the construction of Lincoln High School. Each contractor was awarded a contract for that part of the

construction related to its specialty. Each contractor executed separate, direct contracts with the School Corporation, using the American Institute of Architects (AIA) Standard Form of Agreement Between Owner and Contractor (Contract).

The contract executed by Barth in this case was identical to those executed by Traylor and Slutsky–Peltz. Each of these contracts specifically referred to the other contractors by naming the contractors generically by specialty, and by specifically referring to Barth, Traylor, and Slutsky–Peltz as the contractors who would be completing the specialty work. The term "Contractor" when used generically was defined by the contracts to mean the specific entity who executed the contract for that specialty. Of particular importance to the case presently before this court are the following provisions contained in each contract:

"6.2  MUTUAL RESPONSIBILITY

6.2.1  The Contractor shall afford the Owner and separate contractors reasonable opportunity for the introduction and storage of their materials and equipment and the execution of their Work, and shall connect and coordinate his work with theirs as required by the Contract Documents.

6.2.2  If any part of the Contractor's Work depends for proper execution or results upon the work of the Owner or any separate contractor, the Contractor shall, prior to proceeding with the Work, promptly report to the Architect any apparent discrepancies or defects in such other work that render it unsuitable for such proper execution and results.  ...

6.2.3  Any costs caused by defective or ill-timed work shall be borne by the party responsible therefor.

6.2.4  Should the Contractor wrongfully cause damage to the work or property of the Owner, or to other work on the site, the Contractor shall promptly remedy such damage as provided in subparagraph 10.2.5.

6.2.5  Should the Contractor wrongfully cause damage to the work or property of any separate contractor, the Contractor shall upon due notice promptly attempt to settle with such other contractor by agreement, or otherwise to resolve the dispute.  If such separate contractor sues or initiates an arbitration proceeding against the Owner on account of any damage alleged to have been caused by the Contractor, the Owner shall notify the Contractor who shall defend such proceedings at the Owner's expense, and if any judgment or award against the Owner arises therefrom the contractor shall pay or satisfy it and shall reimburse the Owner for all attorney's fees and court or arbitration costs which the Owner has incurred."

Record at 46, 121.  The contracts required that each contractor create and adhere to a work schedule, and cooperate in coordinating its work with the other contractors on the job.  In its complaint, Barth claimed that delays and schedule deviations occurred in the work of Traylor and Slutsky–Peltz which resulted in damages being incurred by Barth.  Relying on the mutual responsibility clause and other provisions of the standard contracts, Barth filed suit against Traylor and Slutsky–Peltz on November 21, 1988.  Barth claimed that it was a third-party beneficiary to the contracts between the School Corporation and Traylor and Slutsky–Peltz.  After a hearing on the evidence, the trial court granted with prejudice Traylor's and Slutsky–Peltz's motions to dismiss.  Further facts will be recited as necessary to this opinion.

### ISSUE

The sole issue raised in this appeal is "whether separate, primary construction contracts executed by all prime contractors on a construction project impose third-party rights and obligations in favor of all other prime contractors."  Appellant's Brief at 1.

### DISCUSSION AND DECISION

We first note that this appeal arises from the trial court's grant of Traylor's and Slutsky–Peltz's motions to dismiss.  Our standard of review of a dismissal granted pursuant to Ind.Trial Rule 12(b)(6) is well settled:

"Motions to dismiss are not favored by the law. Thus, we seek to determine whether the complaint ... stated any allegations whatsoever upon which relief could have been granted. Only when the allegations present no possible set of facts upon which the complainant can recover is a motion to dismiss properly granted. Finally, in making its determination a trial court must accept as true all allegations made by the complainant, and view the motion in a light most favorable to the non-moving party." (citations omitted)

*Employers Insurance of Wausau v. Commissioners of the Department of Insurance* (1983), Ind.App., 452 N.E.2d 441, 444; *see also Hanover Logansport, Inc. v. Robert C. Anderson, Inc.* (1987), Ind.App., 512 N.E.2d 465, 468. Therefore, in order to affirm the trial court's dismissal of Barth's complaint, we must determine that Barth could not be considered a third-party beneficiary to the construction contracts entered into by Traylor and Slutsky–Peltz, and the School Corporation.

■ Generally, only those who are parties to a contract, or those in privity with a party, have the right to recover under the contract. *Gonzales v. Kil Nam Chun* (1984), Ind.App., 465 N.E.2d 727, 729. However, those not a party to the contract may enforce the provisions of the contract by demonstrating that they are third-party beneficiaries to the contract. *Garco Industrial Equipment Co. v. Mallory* (1985), Ind.App., 485 N.E.2d 652, 654. In order to enforce a contract by virtue of being a third-party beneficiary, a claimant must show:

(1) A clear intent by the actual parties to the contract to benefit the third party;
(2) A duty imposed on one of the contracting parties in favor of the third party; and
(3) Performance of the contract terms is necessary to render the third party a direct benefit intended by the parties to the contract.

*Morgensen v. Martz* (1982), Ind.App., 441 N.E.2d 34, 35. The intent of the contracting parties to benefit the third party is, of course, the controlling factor. *Garco Industrial*, 485 N.E.2d at 654. Such an intent may be demonstrated by specifically naming the third-party or by other evidence. *Id.*

■ In the present case, Barth claims that the "mutual responsibility" provisions of the contracts between the School Corporation and Traylor and Slutsky–Peltz, respectively, were intended to confer a benefit upon each prime contractor, including Barth. This court addressed a very similar situation in the case of *Reed v. Adams Steel and Wire Works* (1914), 57 Ind.App. 259, 106 N.E. 882. In *Reed* a general contractor sued another prime contractor based on the third-party beneficiary theory. The contract governing the parties provided: "that the contractor should furnish all material, not governed by the schedule, at such time as should be for the best interest of all contractors concerned, to the end that the combined work of all might be completed on contract time." *Id.* at 263, 106 N.E. at 883. The court in *Reed* held that this provision was not intended to impose any obligation on a third-party contractor, noting: "It is apparent that the board of commissioners was desirous that the whole contract should be completed within the time provided by the contract and that these provisions were inserted to protect the interest of the county, and not for the purpose of affording a remedy to another contractor who might be damaged by delay." *Id.*

However, "each case must be decided on its own unique facts considered in light of the specific contractual agreements and the circumstances under which they were made." *Moore Construction Company v. Clarksville Department of Electricity* (1986), Tenn.App., 707 S.W.2d 1, 10. Unlike the contract provision discussed in *Reed*, the "mutual responsibility" clause contained in the contracts entered into by Traylor and Slutsky–Peltz specifically provided that "any costs caused by defective or ill-timed work shall be borne by the party responsible therefore." Record at 121.

Given this provision and certain other clauses of the contracts, it is our opinion that the reasoning reflected in *Moore* should be applied to the present case. In *Moore*, the Court of Appeals of Tennessee interpreted a construction contract very similar to those now before this court. Indeed, each contract's general conditions were based on the standard form issued by the AIA. The court in *Moore* noted that while the various jurisdictions are split on the issue at hand,[1] a trend appears to be emerging in favor of the third-party beneficiary. *Moore,* 707 S.W.2d at 10. The court then cited to six specific factors relied upon to support prime contractors third-party beneficiary claims:

"(1) the construction contracts contain substantially the same language; (2) all contracts provide that time is of the essence; (3) all contracts provide for prompt performance and completion; (4) each contract recognizes other contractors' rights to performance; (5) each contract contains a non-interference provision; and (6) each contract obligates the prime contractor to pay for the damage it may cause to the work, materials, or equipment of other contractors working on the project."

*Id.* Given contracts containing such factors we consider the conclusion reached by the New Jersey Supreme Court in a similar case to be applicable to the present situation:

"[T]he parties conceived that the prime contractors would benefit from proper performance by their peers. The project could not have been finished without each contractor meeting its respective obligations. It is reasonable to conclude that the obligations of the others induced each contractor to undertake its job at the agreed price."

*Broadway Maintenance,* 90 N.J. at 261, 447 A.2d at 910.

Upon reviewing the factors listed above, we find that the contracts involved in the present case contain the provisions necessary to support a third-party beneficiary claim. The contracts entered into by Barth, Traylor, and Slutsky–Peltz were essentially identical. As stated previously, the general provisions of each contract were based on a standard form promulgated by the AIA. As stated in *Moore:*

"These general conditions specifically recognize that one contractor's work may be only part of the entire project and that other prime contractors may also be performing work on the same project. These general conditions explicitly state that time is of the essence of the contract, that each contractor's work should be promptly performed and completed, and that all contractors on the project have the right to perform their work free from interference." (footnotes omitted)

*Id.* at 11. Most importantly, the general conditions require that each party pay for the damages caused other contractors on the project.[2] Given, this contract lan-

---

1. *M.T. Reed Construction Co. v. Virginia Metal Products Corp.* (5th Cir.1954), 213 F.2d 337 (claim upheld); *J. Louis Crum Corp. v. Alfred Lindgren, Inc.* (1978), Mo.App., 564 S.W.2d 544 (claim upheld); *Broadway Maintenance Corp. v. Rutgers* (1982), 90 N.J. 253, 447 A.2d 906 (claim upheld); *Thomas G. Snavely Co. v. Brown Construction Co.* (1968), 16 Ohio Misc. 50, 239 N.E.2d 759 (claim upheld); *Visintine & Co. v. New York, Chicago, & St. Louis R. Co.* (1959), 169 Ohio St. 505, 160 N.E.2d 311 (claim upheld); *Cf. J.F. Inc. v. S.M. Wilson & Co.* (1987), 152 Ill.App.3d 873, 105 Ill.Dec. 748, 504 N.E.2d 1266 (claim denied); *Buchman Plumbing Co., Inc. v. Regents of the University of Minnesota* (1974), 298 Minn. 328, 215 N.W.2d 479 (claim denied); *Synder Plumbing & Heating Corp. v. Purcell* (1960), 195 N.Y.S.2d 780, 9 A.D.2d 505 (claim denied).

2. *See* Contract provisions 6.2.3 and 6.2.4 as recited in the *Facts* section of this opinion. *Also see* contract provision 10.2.5 which provides: "The contractor shall promptly remedy all damage or loss (other than damage or loss insured on Paragraph 11.3) to any property referred to in Clauses 10.2.1.2 and 10.2.1.3 caused in whole or in part by the Contractor, any Subcontractor, any Sub-subcontractor, or anyone directly or indirectly employed by any of them, or by anyone for whose acts any of them may be liable and for which the Contractor is responsible under Clauses 10.2.1.2 and 10.2.1.3, except damage or loss attributable to the acts or omissions of the Owner or Architect or anyone directly or indirectly employed by either of them, or by anyone for whose acts either of them may be liable, and not attributable to the fault or negligence of the Contractor. The foregoing are in

guage, it is only reasonable to conclude that contracting parties intended each contractor involved in the project to benefit from the timely, competent work of the other contractors or to be able to seek compensation from those contractors failing to complete their work in an appropriate manner. Therefore, we find that Barth was a third-party beneficiary to the contracts entered into by Traylor and Slutsky–Peltz. The trial court erred in dismissing Barth's complaint.

Reversed and remanded for further proceedings consistent with this opinion.

ROBERTSON and MILLER, JJ., concur.

addition to his obligations under Paragraph 4.18."
Record at 204.

