(No. 83-CC-0324—
Lowry Electric Co., Claimant, *v.* The State of Illinois, Respondent.

*Opinion filed May 30, 1991.*

*Order filed June 18, 1991.*

Elmer C. Weihl, for Claimant.

ROLAND W. BURRIS, Attorney General (WILLIAM WEB-
BER, of counsel), for Respondent.

## OPINION

Montana, C.J.

The Claimant, Lowry Electric Company, brought this claim seeking $122,487.31 in damages due to delays and other problems Claimant encountered in the performance of a construction contract with the Respondent's Capital Development Board (hereinafter referred to as "CDB"). The cause was consolidated for trial purposes only with claims of Guarantee Electrical Company, Lippert Brick Contracting, and K & S Associates, Inc.

The facts of the case are sufficiently set out in separate opinions of this Court relating to the claims of the joined Claimants so that only those facts necessary to decide this claim will be stated herein.

On July 18, 1978, the CDB awarded a contract for electrical work to Claimant, Lowry Electric Company, for work on the Skilled Training Center of the East St. Louis Community College project. Claimant received its notice to proceed from the CDB on August 30, 1978.

Lowry had 550 days from August 30, 1978, to complete its work. Time was of the essence according to the contract documents. Claimant was to be off the project by February 4, 1980.

The project did not get off the ground for over a year from August of 1978 due to the inability of the State to get the excavating work done. Initially the excavator chosen by the CDB, Eanes Excavating, was unable to obtain a bond. Later, the CDB change ordered Eanes to work for K & S, the general contractor. Eanes was unable to do the work and eventually was terminated. The successor excavator also had problems. Over a year was wasted on an excavating contractor.

The CDB had the obligation to see that the site was excavated. It failed miserably. Of course, other problems plagued the project beyond the initial excavation problems. Once the project got off schedule, the architect/engineer and the general contractor, K & S, were incapable of getting the project back in sync. The roofing delayed the project. The CDB had five different project managers which delayed the project. Co-Mac, the concrete company, delayed the project. Incredibly poor coordination delayed the project, and theft delayed the project. The evidence is clear, however, that Lowry Electric caused no delays on this project. As electricians, they were at the mercy of the other trades. The CDB at one time gave Lowry two sets of drawings that cancelled each other out. On other occasions, Claimant could not work because other trades were working in the area and at other times, it would do their work and another trade would move it, requiring the Claimant to do the work over. All of this was because of a lack of coordination initially caused by the project losing a year due to no excavation.

Because of the delays, Lowry did not receive its final acceptance from CDB until March 3, 1982. Claimant was paid its contract price of $237,860.00 but because of these delays, Claimant testified it experienced increased labor and material costs. Additionally, because of the delays and coordination problems, Lowry had to expend additional man-hours to complete its work over and above the man-hour estimations included in its bid. Lowry claims an additional 9426 hours expended because of delays.

Lowry's Exhibit No. 1 is the owner contractor agreement. Exhibit No. 2 is the authorization to proceed dated August 30, 1978, by the CDB. Exhibit No. 3 is a copy of the IBEW Local 309 electrician rates September 1, 1978, to August 31, 1979; March 15, 1978, to August 31, 1978; September 1, 1979, to February 28, 1980; March 1, 1980, to August 31, 1980; September 1, 1980, to December 31, 1980; and September 1, 1981, to February 28, 1982. Lowry's Exhibit No. 4 documents Lowry's alleged material increases. Exhibit 4A is the statement of monthly electrician hours expended; Exhibit 4B is a recap of the additional costs incurred by Lowry Electric Company. Exhibit No. 5 is a letter from Claimant to CDB reserving its rights to its delay claim. Exhibit No. 6 is the CDB's letter to Claimant stating it does not have funds to pay the delay claim. Exhibit No. 7 is the CDB's certificate of final acceptance to Claimant dated March 3, 1982. Exhibit 3 indicates the labor cost increases to Claimant by its union electricians. The labor rate of $17.58 per hour for journeymen plus $18.25 per hour for foremen effective on September 1, 1978, at the start of the job increased to $20.99 per hour for journeymen on September, 1980, through December 3, 1980, and the rate for foremen went to $23.69 per hour for September

1, 1980, through February 28, 1982. The additional increases are documented.

As to the material, the contract specifications required Lowry to purchase the material at the time the bid was accepted. Claimant did not purchase all of its material at the time of bid acceptance. Claimant indicates it did not order the material at the time of bid acceptance because lengths of conduit were not ordered until the lengths were known.

Claimant's contract was with the CDB. The CDB has the primary responsibility for making the work site available to the contractor in time for the contractor to do the work. As owner, the CDB is legally liable for the delays and resulting damages. The fact that the CDB reportedly contracted with other entities who may be to blame for delay is of no consequence to this action. If the CDB is damaged by the actions of others, it may pursue those it believes caused the damage under the circumstances as are involved here. Where all of the parties cannot sue each other in one forum, the Court of Claims is the proper forum and this result must obtain. *J. F. Inc. v. S.M. Wilson and Co.* (1987), 152 Ill. App. 3d 873.

It is inevitable that all construction projects will suffer delays of one form or another, particularly projects calling for coordinated efforts by multiple contractors. In the instant case, there were thirty-six prime contractors. Normally there are five. The State broke the contracts down to try to obtain minority participation on the project.

For a delay to be tolerated, it must be reasonable under the circumstances. The delay on this project of almost two years was considerable and intolerable.

Other than to try to put the blame on other contractors, the Respondent has offered little excuse for the delay in excavation from the beginning.

In the present case, Lowry was given 550 days to complete its work from the authorization to proceed. The authorization to proceed issued on August 30, 1978. The entire project was to be completed in 730 days pursuant to the project specifications. While the Respondent argues that the completion date was provisional and did not impose a duty upon the owner to ensure completion by that date, citing *Edwards Construction Co. v. Illinois State Toll Highway Authority* (1975), 34 Ill. App. 3d 929, Respondent's reliance is misplaced. Here the contract was awarded in July of 1978, and the authorization to proceed was issued August 30, 1978. It was reasonable for Claimant to expect that its bid and completion date would correspond to the original specifications and the lower labor rates. Claimant could rely on the outside completion date of 730 days as a reasonable completion date.

The delays in this case were beyond being reasonable. Respondent had the responsibility for the damages sustained by the Claimant due to the delays. However, the damages are difficult to ascertain exactly. Claimant produced adequate evidence that its actual labor costs exceeded its estimated labor costs. From January 24, 1980, to December 1981, Claimant originally claimed 9426½ hours at increased labor costs. There is nothing, however, to show that these hours are reasonable and the exhibits include certain estimates of time expended. The increased labor costs were attributed to wage rate increases, loss of efficiency because of the necessity of stopping and starting at various times, redoing work because of lack of coordination, and the requirement of

having supervising personnel on the project for more than the original 550 days.

The Commissioner struck Claimant's Exhibit 4B as to its claim for additional labor costs due to length of time to complete the project. Change orders for this work were evidently paid. The proof was insufficient to show any further monies due under that category and Claimant's claim was reduced at trial to $80,337.58.

This leaves only the delay claim for labor due to labor rate increases totaling $21,030.68 in the Claimant's Exhibit 4B. With the unknown variables, that some delay is inevitable, the inherently speculative nature of computing loss of efficiency, and the winter weather, the loss can fairly be stated for Claimant's damages occasioned by delay for labor increases to $16,500.00. Admittedly, this figure is somewhat arbitrary and the initial delay was primarily the responsibility of the Respondent, but the Court does not think the damages are computable down to the penny and Claimant admits this in its brief. Unlike Lippert Brick, this Claimant did not finish its work within the time length specified. As the trier of fact, it is the Court's responsibility to arrive at an amount of damages after weighing the evidence. See *Neylon v. State* (1986), 39 Ill. Ct. Cl. 65. These findings represent a fair amount.

The material claims of Claimant are more troublesome. The specifications required Claimant to purchase materials at the time of the bid award. Claimant apparently did not do so to the extent of its $5,212.77 claim for wire, cable and miscellaneous items. Claimant argues it did not know the number of feet of conduit work until other work was done and this should excuse Claimant from the contractual provisions. Claimant has failed to present any proof through exhibits or testimony

to substantiate this claim beyond mere conclusions. Having not met their burden, the materials claim should be denied. All of the other arguments of Claimant concerning storage and security are merely speculation not supported by any proof.

Any other factor the Claimant seeks to have considered in arriving at the damages for delays are overhead and profits. Claimant seeks 15% of its delay for overhead and profit. The State cites *Egizii Electric v. State* (1973), 32 Ill. Ct. Cl. 93, in its opposition to profits as a measure of damages. The Respondent does not challenge an award for overhead. Suffice it to say *Egizii, supra* does not stand for the proposition that profit is not a measure of damages. This Court has made an award of 10% each for overhead and profit as a measure of damages in delay claims. (See *J.F. Inc. v. State* (1988), 41 Ill. Ct. Cl. 5.) Overhead and profit are appropriate items of damages. The 15% sought by Claimant is not out of line. Multiplying the previously stated amounts of damages by this percentage, additional damages of $2,475.00 are appropriate.

Two questions remain. The Respondent raises the public policy issue that the actions of the State to try to keep Eanes Excavation on the job as a minority contractor was an important public goal and this excuses the State from delay claims caused by this important public service. The argument is that a public policy goal was minority business participation in State contracts. In this case, Eanes Excavating could not obtain a performance bond. Later, working under a change order through K & S, the general contractor, it became obvious that Eanes could not do the job. The Respondent argues that the CDB took its actions to try to keep the minority contractor working for good cause and its

actions were consistent with a strong public policy, and that to penalize the State for adherence to this societal goal would effectively contravene public policy. Even if it is assumed that this is a valid defense, and we do not find that it is, we are not convinced that the goal could not have been met with other means. While the goal was laudable, these contractors should not be the sole bearers of the cost of reaching it. The only ones penalized here are a few contractors who the State wants to be left holding the bag. These contractors continued to work on the word of the CDB officials that they would be treated fairly. The State cannot be penalized because it is not the State's money that will be used to pay Claimant. The money comes from all the taxpayers in the State. If anyone should be "penalized" as Respondent suggests, then all the people should pay to spread the cost to all taxpayers for the public purpose.

In summation, the Claimant has suffered damages in the following amounts:

| | |
|---|---|
| Labor increases | $16,500 |
| Overhead and profit | 2,475 |
| Total Damages | $18,975 |

The question of entering an award remains. This Court cannot enter an award unless sufficient funds remain released and unexpended in the appropriation made to fund the project. See discussion in *Loewenburg/Fitch Partnership v. State* (1986), 38 Ill. Ct. Cl. 227, and *Ude, Inc. v. State* (1982), 35 Ill. Ct. Cl. 384. The record is devoid of fund summaries for the project, and the Court cannot determine if any funds remained available for the Court to award damages. There was some hearsay to the effect that there were no funds and that the CDB had not paid any delay claims. However,

there was also some testimony about a contingency fund.

Before entering judgment for the Claimant or making a recommendation to the General Assembly, we will need the fiscal data including the balance of released funds which lapsed at the conclusion of the project. Respondent is ordered to file said information within fourteen days.

## ORDER

Montana, C.J.

These cases come on to be heard following the Respondent's response to the opinions entered herein on May 30, 1991, and the Court being advised;

In the aforementioned opinions the Court found that each of the Claimants suffered damages but refrained from actually awarding the damages pending the Respondent's submission of the fiscal data on the remaining balances of funds appropriated for the two projects. The Respondent has promptly complied with the directive and the claims are again before us.

The Respondent's reply is accepted as *prima facie* evidence of the facts contained therein pursuant to 74 Ill. Adm. Code 790.14. Respondent stated that a total of $19,879.00 lapsed in Appropriation Account Code Number 141-51184-4470-28-78 for CDB Project Number 810-029-001, the East St. Louis Junior College and VoTech. On the Community College of East St. Louis project, No. 810-092-001, the Respondent stated that $88,762.62 lapsed in three separate Appropriation Account Codes, 141-51184-4470-28-78, 141-51184-4470-60-75, and 141-51184-4470-60-79. One Appropriation Account Code, 141-51184-4470-28-78, is listed under

both projects. This appears to be an artificial separation made by the CDB. In appropriating funds for the project the General Assembly apparently did not so designate the money or else it would have made separate appropriations. The Court sees no reason that this money should not be comingled. However, an insufficient amount of funds lapsed to cover all of the damages.

As indicated in the prior opinion, it is this Court's policy in breach of contract claims to limit awards so as not to exceed the amount of funds, appropriated and lapsed, with which payment could have been made. To do otherwise, *i.e.*, to award money for debt incurred beyond the sum allotted by the General Assembly, would be tantamount to granting a deficiency appropriation. The appropriation of State funds is the constitutional prerogative of the General Assembly. It is the Court's duty to uphold that process. It is also the Court's duty to advise the General Assembly. (*Thorlief Larsen & Son, Inc. v. State* (1990), 42 Ill. Ct. Cl. 195; *Bojko v. State* (1988), 41 Ill. Ct. Cl. 202; *J.F. Inc. v. State* (1988), 41 Ill. Ct. Cl. 5; *Loewenberg/Fitch Partnership v. State* (1986), 38 Ill. Ct. Cl. 227; *Ude, Inc. v. State* (1982), 35 Ill. Ct. Cl. 384.) Further, where there are several Claimants vying for the same lapsed funds and an insufficient amount lapsed to cover *in toto* all of the damages suffered, it is this Court's policy to make awards on a first in first out (FIFO) basis. *Thorlief Larsen & Son, Inc. v. State, supra* (1990); *Board of Trustees of Southern Illinois University v. State* (1988), 40 Ill. Ct. Cl. 146; *Aurora College v. State* (1985), 37 Ill. Ct. Cl. 321.

Among the four claims at bar, that of Guarantee Electrical Company was filed first. Guarantee suffered damages totalling $269,052.00 as a result of contract

breaches on CDB Project No. 810-092-001 only. The total amount of lapsed funds on that project was $88,762.52. As previously pointed out, the lapsed funding for the other project should also be considered because it is one and the same appropriation. The $19,879.00 will be added for a total award to Guarantee of $108,641.62.

The allocation of all of the lapsed funds to Guarantee on the FIFO basis renders moot which contractor filed next as the funds are exhausted.

For purposes of potential consideration of these four claims by the General Assembly and in fulfilling our role as an advisory body to the General Assembly we reiterate our finding in the prior decisions and point out that but for the insufficient amount of lapsed appropriations on this project we would have made the following awards of damages:

1. Guarantee Electrical Company—$160,410.38 (over and above the award to be made hereinbelow)
2. Lowry Electric Company—$18,975.00
3. Lippert Brick Contracting—$22,376.81
4. K & S Associates, Inc.—$264,137.56

Accordingly, it is hereby ordered that Guarantee Electrical Company be, and hereby is, awarded the sum of $108,641.62 and the other claims are denied solely for the reasons stated herein.